## HART GROCERY CO. v. HUNT et al.

No. 24822.   Nov. 26, 1935.

Thos. J. Horsley, for plaintiff in error.

Short & Pipkins (Robert Burns, on the brief), for defendants in error.

PER CURIAM. The parties appear here in the same relative positions they occupied in the trial court, and they will be referred to as plaintiff and defendants.

The plaintiff instituted this suit by filing a verified petition, specifically alleging the correctness of an attached verified itemized account, to recover the sum of $2,210.78, from the defendants as the balance due for merchandise sold and delivered to the defendant E. Woody Hunt between May 9, 1931, and January 8, 1932, the payment of which was guaranteed in writing by his father and co defendant, John F. Hunt. The defendants filed their verified answers, denying that they were indebted to the plaintiff in the sum sued for, or in any other amount, but admitting the corporate existence of the plaintiff, and that the defendant E. Woody Hunt owned and operated the store known as Hunt for Hunt's Grocery at Longview, Tex., as alleged in the plaintiff's petition. The correctness of the account sued upon was not specifically denied under oath by either defendant. At the conclusion of all the evidence, the plaintiff made the following request or motion for a directed verdict: "Comes now the plaintiff and requests the court to instruct the jury to return a verdict for the plaintiff and against the defendants." This request was overruled by the court, the cause was submitted to the jury under oral instructions, and a verdict, signed by nine of the

jurors, was returned in favor of the defendants.

The plaintiff filed its motion for a new trial, duly excepted to the order of the court in overruling the motion, and has regularly perfected its appeal to this court.

The numerous assignments of error included in the motion for new trial and in the petition in error are combined for argument by the plaintiff under two propositions: (1) That the court erred in refusing to instruct the jury to return a verdict for the plaintiff and against the defendants at the conclusion of all the evidence on request of plaintiff which was denied and exceptions thereto saved; (2) that upon reversal of this cause this court should either render such judgment as the trial court should have rendered or remand the cause to the trial court, with instructions to render judgment for the plaintiff and against the defendants for the amount sued for. The defendants contend that the trial court properly refused the request for an instructed verdict because: (1) There was a conflict in the evidence justifying the submission of the case to the jury; (2) the plaintiff's request for a directed verdict was not submitted in the form of a motion, but as a request for a special instruction, and that as such it was required to be in writing under subdivision 5, section 359, O. S. 1931.

As to a substantial part of the account there was a conflict in the evidence, and the court therefore did not err in refusing the general request for an instructed verdict in favor of the plaintiff for the full amount sued for. Having reached this conclusion, it is unnecessary for us to determine the second contention made by the defendants, that a request or a motion for a directed verdict is required to be in writing under subdivision 5, section 359, O. S. 1931.

The account sued upon is composed of a large number of items alleged to have been sold to the defendant E. Woody Hunt between the dates of May 9, 1931, and January 8, 1932. Forrest Smith, who appears to have been the manager of the plaintiff corporation, testified as to the correctness of the account and identified the itemized statement and invoices which were introduced in evidence to prove the account, and he further identified the written guaranty executed by the defendant John F. Hunt. The defendant E. Woody Hunt testified that he commenced doing business with the plaintiff on May 9, 1931, and continued to trade with the p aintiff until on or about December 18, 1931, at which time the plaintiff cut off his credit and refused to sell him any more goods. He also testified that he sold his place of business at Longview, Tex., and returned to Seminole, Okla., on or about December 30, 1931, and since that date had had nothing to do with the management of the store. This testimony was tantamount to a denial of that part of the account which was alleged to have been incurred after December 18, 1931, consisting of items totaling in value $819.61. It undoubtedly would have been error for the court to have sustained the general request made by the plaintiff for a general verdict in favor of the plaintiff for the full amount sued for in the face of such a clear conflict in the evidence as to such a material portion of the account. The defendants at no time expressly denied any part of the account, and in our view of the evidence there was no legal or competent evidence introduced by the defendants denying even by inference that portion of the account incurred up to December 18, 1931, and consisting of items totaling in value $1,391.17, but obviously, as to the $819.61 charged after that date, the only logical inference that can be drawn from the testimony of the defendant E. Woody Hunt is that he denied incurring that part of the account. On motion to direct a verdict the inferences most favorable to the party against whom the motion is made must be drawn, and when the inferences are adverse to the party requesting the charge a verdict cannot be directed. 26 R. C. L. 1067, 1068, sec. 74; Cooper v. Flesner, 24 Okla. 47, 103 P. 1016, 20 Ann. Cas. 29, 23 L. R. A. (N. S.) 1180; Harris v. Missouri, etc., R. Co., 24 Okla. 341, 103 P. 758, 24 L. R. A. (N. S.) 858; St. Louis, etc., R. Co. v. Cole, 49 Okla. 1, 149 P. 872, L. R. A. 1915F, 866; Supreme Tribe, etc., v. Owens, 50 Okla. 629, 151 P. 198, L. R. A. 1916A, 979.

In the case of Washington Asphalt Block & Tile Co. v. Mackey, 15 App. D. C. 410, the Court of Appeals of the District of Columbia held in the second paragraph of the syllabus:

"If there is evidence sufficient to be submitted to the jury in respect to either of two counts of a declaration, a prayer for a general verdict for the defendant upon the whole declaration cannot properly be granted."

The court used the following language in that case:

"Upon this evidence the defendant moved the court to instruct the jury to return a verdict for the defendant, upon the ground

that the plaintiff had failed to make out such case as entitled him to have the case submitted to the jury. This application was refused, and we think rightly so. The prayer was that the case should be instructed out of court without any reference whatever to the different counts of the declaration. Whether there was evidence sufficient to support both counts of the declaration, or only one or neither of them, the court had to determine as a preliminary question; but if there was evidence sufficient to be submitted to the consideration of the jury in respect to either one of the counts of the declaration a general prayer for a general verdict for the defendant upon the whole declaration could not be granted."

To the same effect is Tourtellotte v. Saulnier et al., 267 Mass. 361, 166 N. E. 879.

The Circuit Court of Appeals of the Sixth Circuit held in the case of Hessig-Ellis Drug Co. v. Grinnell Lithographic Co., 33 F. (2d) 449, in the second paragraph of the syllabus:

"Refusal of requested charge which would have directed jury to find for defendant as to matter upon which there was an issue for the jury held not erroneous."

In the case of Thos. Goggan & Bro. et al. v. Goggan, 146 S. W. 968, the Court of Civil Appeals of Texas held in the first paragraph of the syllabus:

"Where defendant was not entitled on the evidence to an instructed verdict on its cross-action, a requested charge 'To return a verdict for the defendant,' was properly refused as covering the cross-action as well as the principal action."

There was no denial on the part of the defendants as to the account as presented by the plaintiff up to December 18, 1931. The defendant E. Woody Hunt testified as follows:

"Q. Did you purchase or owe for any of the groceries that they have introduced a statement here for? * * * A. Not from this statement. No, sir. Q. Did you ever see any of these statements? A. No, sir. Q. The groceries you bought were they signed for by you or your employees? A. Yes, sir."

The witness had just previously testified as follows:

"Q. Did you ever see that statement, the original like that? A. No, sir. Q. Is that the kind of statement they rendered to you? A. Well, it was on the same order as this, yes, sir. A. Would you say that is a copy of what he delivered to you? A. No, sir. Q. Did you ever see one made out on paper like that? A. The first few months, yes, sir, and then something similar to that. * * * Q. Now, you said in the last few months

something similar to that, what do you mean by that? A. When I first started buying they wrote them down there and along at the last they were typewritten there."

It is apparent from this testimony, taken together, that the defendant in the first part of the testimony above quoted was not denying the account, but was merely denying that he had ever seen statements of the account made out in the manner of, or on paper similar to that of, the one exhibited to him.

The defendant E. Woody Hunt admitted that he continued to trade with the plaintiff up until December 18, 1931:

"Q. Did you continue to trade with Hart's Grocery? A. Yes, sir. Q. How long did you trade with them? A. Up until the 18th, I believe, of September. Q. About the 18th of September? A. I forget, I kept on until they shut me off. Q. Did they fina'ly close you off? * * * Q. Did they cut you off and refuse to sell you any more? By the Court: He said they did. Q. In what month was that? A. December."

Upon cross-examination the defendant E. Woody Hunt testified as follows:

"Q. Mr. Hunt, have you carefully examined the various items in evidence by plaintiff's Exhibit '3,' as shown by those various instruments? A. I have looked over the bills here. Q. Will you just state to the jury the items of merchandise shown on these bills that you didn't receive in your store? A. All I received was signed for. Q. I am asking you to take this original statement and point out what you didn't receive? A. I bought so many (interrupted). Q. Can you point out one item of merchandise you didn't receive in your store? A. I don't know that I bought any of this.—No, sir, I can't. Q. You cannot point to any item that you didn't receive in your store, can you? A. No, sir, I cannot. By the Court: Q. Can you show any item on there that you did receive? A. Yes, sir, I can."

This testimony cannot be construed as an admission of the whole account, but taken in connection with the testimony given by the witness on direct examination that he continued to trade with the plaintiff until December 18, 1931, it constituted an admission that he received the merchandise charged, at least, until that date.

The written guaranty given by the defendant John F. Hunt was as follows:

"Sapulpa, Okla.          6/20, 1931.

"Hart Gro. Co.
  "Marshall, Tex.

"This is to certify that I guarantee pay-

ment of Hunt for Hunt's acct. to be paid when due.

"John F. Hunt

"Witnesses:
"J. V. Cheney
"Forrest Smith"

The witness Smith identified the instrument, the defendant John F. Hunt admitted that he executed it, and it was introduced in evidence without objection. The theory upon which the case was tried in the trial court as to the defendant John F. Hunt on this written guaranty was that he was liable if the principal defendant, E. Woody Hunt, was liable, and to the same extent. The theory contended for in this court upon behalf of John F. Hunt is that the written guaranty guaranteed payment only of the balance of the account due at the time the guaranty was executed, June 20, 1931, and that there was no consideration therefor ex pressed, implied, pleaded or proved, and hence the guaranty would not be binding upon him. The instrument introduced in evidence is an unconditional and continuing guaranty of the account of E. Woody Hunt, and under any theory of the case it guaranteed payment of the account at least from the date of its execution and imported a consideration. Since this case must be reversed for a new trial, it will serve no useful purpose to extend the discussion of this phase of it or the defendants' new theory in regard to it. Considerable evidence was introduced to attempt to show a novation as to the account and a release of the guaranty, both affirmative defenses, neither of which was in issue under the pleadings, and the court correctly excluded such evidence from the jury's consideration.

It is not necessary to review the evidence further. Suffice it to say that while there was a conflict in the evidence and the inferences as to that part of the account alleged to have been incurred between December 18, 1931, and January 8, 1932, totaling $819.61, there was a total lack of competent evidence to sustain the verdict as to that part of the account incurred up to December 18, 1931, totaling $1,391.17, which under the evidence stands as practically admitted. It would be manifestly unjust to permit this verdict to stand.

In Maley v. Lamberton et al., 113 Okla. 168, 240 P. 716, 718, this court said:

"Where a verdict cannot be justified upon any hypothesis presented by the evidence, it would be unjust to permit it to stand. The jury are not permitted to disregard the law and the evidence and arbitrate the matters submitted to them according to their own theories of what may be right between the parties, which is in reality deciding it merely according to their own whim, and in disregard of the evidence given at the trial."

This rule was adopted and upheld in the later case of Alexander Drug Co. v. Whitaker et al., 146 Okla. 61, 293 P. 264.

In its motion for a new trial and in its petition in error the plaintiff asserted the insufficiency of the evidence to sustain the verdict, and that the verdict was contrary to the evidence and to the law. The trial court committed reversible error in denying plaintiff's motion for a new trial after the jury returned its verdict for the defendants.

The cause is remanded to the superior court of Seminole county, with directions to vacate its judgment rendered in this cause and to set aside the verdict of the jury and grant the plaintiff a new trial.

The Supreme Court acknowledges the aid of Attorneys Leo Considine, B. A. Ames, and Frank J. Anderson in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Considine and approved by Mr. Ames and Mr. Anderson, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BUSBY, and PHELPS, JJ., concur.