SINCLAIR REFINING CO. v. ROBERTS.

No. 33383.  May 10, 1949.

*206 P. 2d 193.*

Edward H. Chandler, W. H. McBrayer, and Cecil R. Buckles, all of Tulsa, for plaintiff in error.

E. G. Avery, of Wagoner, and Hall & Cotton, of Oklahoma City, for defendant in error.

CORN, J. Between January 1, 1937, and October 15, 1941, plaintiff was the defendant's commission agent, or bulk warehouse dealer, in Wagoner, Okla., under written contracts of agency, all their transactions being part of a continuous, running account. Defendant owned the warehouse and storage facilities, and retained title to all products distributed by plaintiff, who furnished trucks and employees for such distribution. During this period the parties negotiated several contracts, all of which were the same except as to prices to be charged for merchandise and the amount plaintiff was to receive as commissions.

Under the terms of the contracts plaintiff was responsible for all losses or shortages of merchandise, and agreed that defendant could withhold amounts in payment of such shortages from the money earned and due plaintiff during the contract. It was agreed that the parties could terminate the contract at any time and without cause,

and that the written contract constituted the entire agreement and that no amendment or modification of the contract was valid unless evidenced by a writing signed by defendant's authorized agent.

During plaintiff's agency defendant's auditors would appear at irregular intervals to inventory and audit the business. These audits would reveal shortages of merchandise which would be charged against plaintiff. Being unable to reimburse defendant in cash, the plaintiff would be required to execute written authorization for the defendant to deduct the amount of the shortages from his future commissions, over a specified period of time. When the plaintiff surrendered his agency in 1941, the total of the commissions so withheld amounted to $1,298.35.

March 27, 1944, plaintiff brought suit in the county court to recover $1,000 of these withheld commissions. His petition admitted execution of the written contracts and his agency, but alleged the contracts had been vacated and altered by oral agreements over the years and had never been enforced except as to the price of merchandise and the commissions to be paid. He alleged defendant's warehouse and storage facilities were old and defective, but that defendant consistently refused to repair or keep them in proper condition, and that the losses of gasoline, kerosene, and other petroleum products were occasioned because of leakage, evaporation, and theft resulting solely from the defective conditions, and not by his own fault. Further, that defendant acted arbitrarily and by means of menace, fraud, and duress to force his consent to authorize deduction of the shortages from his commissions.

By answer defendant alleged the contracts were in force during the period of plaintiff's agency and constituted the entire agreement defining the rights and obligations of the parties; that the audits reflected shortages for which plaintiff was bound to account and which he acknowledged in writing, constituting an account stated between the parties, and all such amounts had been fully paid and discharged; that by executing the deduction authorizations he acknowledged his indebtedness and, having paid same, he was estopped to deny validity of the authorizations, execution of which amounted to reaffirmance of the contracts and plaintiff therefore was estopped to deny the validity thereof, and defendant thus was not indebted to plaintiff in any amount.

Plaintiff's theory was that the written contracts never were enforced after execution of the first contract, except as to the provisions mentioned, and had been abandoned in favor of oral agreements and custom; that the losses of merchandise resulted solely from defendant's failure to maintain adequate plant facilities and therefore he was not liable for the shortages, but defendant arbitrarily withheld the amount of same from his commissions and by coercion and duress forced him to agree to authorizing the deductions.

Plaintiff's testimony was directed toward showing the defendant's warehouse was poorly constructed and maintained, and the storage tanks and facilities were in such poor condition that losses resulted from undue leakage and evaporation, water entering the storage tanks, and thefts, all of which was without fault on plaintiff's part; that he had often complained and directed defendant's attention to the generally inadequate facilities and their poor condition, but defendant made no effort to correct any of the defects.

He further testified defendant's auditors would call and take over his books, but, with one exception, was never given a copy of the audit although each time he was advised of the amount of shortage and the auditor would demand payment. Plaintiff would complain that the shortages were not his fault, but the auditors would require

him to execute a statement admitting the amount of indebtedness and authorizing deduction from his commissions. Plaintiff would protest, but would be told there would be a new agent if he did not make settlement. He was afraid to refuse to do as demanded even though the shortages were not his fault, because he was given to understand that his agency would be canceled if he refused. Testimony concerning the physical condition of the plant, manner of doing business, and the nature and extent of the losses was corroborated by plaintiff's former employees.

Cross-examination of plaintiff concerning the alleged abandonment of the contracts brought out that there was no written agreement altering any provision, and plaintiff admitted he had followed instructions and complied with the terms of his contract, but denied the provision fixing his liability for the shortages and authorizing the deductions from his commissions ever was effective.

Defendant's evidence was that no threats to cancel plaintiff's contract had been made, and that the auditors lacked authority to make any statement concerning the agency. The equipment was not faulty, and if plaintiff had properly kept same there could have been no shortage resulting from water entering the tanks. Plaintiff never complained and always signed the authorizations. Correspondence from plaintiff regarding one audit was introduced, wherein he expressed complete satisfaction with the audit results charging him with a shortage. This audit was among those which made up the total amount withheld.

Defendant's district managers never knew of any faulty conditions, or of water in the tanks causing losses, and plaintiff made no complaint, either concerning equipment or losses claimed to have resulted therefrom, and any legitimate complaint would have been adjusted. The audits establishing the amount of the shortages show that plaintiff received credits for coverages of merchandise on each inventory. Audits between May, 1937, and August, 1941, showed the following shortages: gasoline $482.58; kerosene $56.05; other products, including oil and grease in individual containers, $759.67.

Defendant's motion for directed verdict was overruled and the jury returned a verdict for plaintiff for $850, and judgment was rendered thereon. The argument for reversal is presented under nine propositions, but for purposes of this discussion it is unnecessary to consider other than the following matters: (1) The contracts were executed, complete and unambiguous, and it was not shown that they were vacated, changed or abandoned by oral agreement. (2) For defendant to require plaintiff to perform the lawful obligations he assumed under the contract did not constitute duress.

The allegations of the petition regarding abandonment of the contracts have been noted. No evidence was introduced showing abandonment of any particular provision. Cross-examination of plaintiff established that there had been no writing evidencing any alleged change or alteration. With but two exceptions plaintiff admitted the contract requirements were complied with and governed the manner in which the parties conducted their affairs. Both exceptions were instances where plaintiff found it expedient, to facilitate his sales and services to customers upon his own responsibility, to vary the manner in which merchandise was furnished or credit extended without complying with the contract or requesting permission from defendant to do so.

Plaintiff's testimony regarding the alleged abandonment contradicted the allegations of the petition, by admitting fulfillment of the provisions and obligations, except in two instances. There was no testimony showing defendant intended or agreed to abandonment or change of any part of their agreement. The general rule as to abandonment of

contracts is stated in 17 C. J. S., Contracts, sec. 412:

"Rights acquired under a contract may be abandoned or relinquished by agreement, conduct, or by a contract clearly indicating such purpose. To constitute an abandonment of rights, an actual intent to abandon must exist. . . ."

Not only does the testimony fail to show any abandonment by the parties, but to the contrary fairly demonstrates lack of any intention or mutual assent to variation of any of the contract terms. These were executed, unambiguous contracts, and parol testimony could not be relied upon to vary their terms. The rule of construction is that where parties express their agreement in clear and unambiguous language, courts will give effect to the contract according to their terms in the absence of fraud, or other grounds affecting enforcement. 17 C. J. S., Contracts, §294; 15 O.S. 1941 §153 et seq.; Continental Cas. Co. v. Wear, 185 Okla. 245, 91 P. 2d 91.

Plaintiff alleged fraud and mistake in the amended petition, but no specific acts of fraud were alleged, and there was no evidence concerning specific acts of fraud. To properly allege fraud it is necessary that facts showing same must be pleaded, and mere conclusions are insufficient. Wray v. Howard, 79 Okla. 223, 192 P. 584.

The contracts provided no change was valid unless evidenced by writing signed by defendant, and plaintiff admitted there was no such written agreement. Contrary to the petition and evidence, plaintiff admittedly conducted his business according to the terms of his contracts, and received the benefits accruing therefrom. It is clear the parties did not abandon, change or alter their relation, but considered themselves fully bound and operated under their contracts during the entire period of their relationship.

This leaves for consideration only the question whether plaintiff was under duress to sign the authorizations permitting deduction of the amounts of the shortages from his commission, revealed by audits.

Our statute, 15 O. S. 1941 §55, provides:

"Duress consists in:

"1. Unlawful confinement of the person of the party, or of husband or wife of such party, or of an ancestor, descendant, or adopted child of such party, husband or wife.

"2. Unlawful detention of the property of any such person; or

"3. Confinement of such person, lawful in form, but fraudulently obtained, or fraudulently made unjustly, harassing or oppressive."

This provision of our statute has been construed in Samuels Shoe Co. v. Frensley, 151 Okla. 196, 3 P. 2d 216, where we point out that duress exists when the *unlawful act* of another induces a person to make a contract, or perform some act, under circumstances depriving him of the exercise of free will. This holding is in accord with the modern rule announced in 17 C. J. S., Contracts, §173.

But, it is further recognized that a threat to perform a lawful act, or to do that which one has the legal right to do, does not constitute duress. Id., §172; also see F. B. Collins Inv. Co. v. Easley et al., 44 Okla. 429, 144 P. 1072, wherein it was held that a threat to foreclose a mortgage did not constitute duress; and that duress could not be predicated upon a positive threat to injure a person's credit.

In Motor Equipment Co. v. McLaughlin et al., 156 Kan. 258, 133 P. 2d 149, that court considered the question of duress at length, and pointed out that although the question whether certain alleged threats deprived a party of his free will is for the jury, evidence of duress must be substantial, and the trial court is not required to submit to the jury evidence not measuring up to the required standard of proof.

Accepting as true the testimony that defendant's agents threatened cancellation of plaintiff's agency if he did not consent to the deductions, nevertheless this was insufficient as a matter of law to establish duress. Under the contract defendant could remove plaintiff at any time without cause, and a threat to do this could not have been oppressive to plaintiff. And, under his agreement plaintiff assumed full responsibility for the shortages as an insurer, and upon determination of the amount thereof defendant had a lawful right to insist that plaintiff perform under the terms of the contract, and exercise of this right could not constitute duress.

We are impelled under this record to conclude there was no evidence of duress sufficient to create a jury question. The question of the sufficiency of plaintiff's testimony to sustain the allegations of the petition was properly raised by defendant. Although the jury in a law case is the trier of the facts, and their judgment ordinarily is not subject to interference by this court, there must be some limitation upon a jury's power to render verdicts which transgress oft-announced and well established principles of law.

This appears to be a case wherein the jury's verdict was based upon conjecture and speculation, and where there was a complete lack of evidence tending to prove, either directly or by permissive inference, the essential facts which the jury had to find before returning a verdict for plaintiff. In such instances the jury's verdict will be set aside. See Hart Grocery Co. v. Hunt et al., 175 Okla. 32, 52 P. 2d 66; Riddle v. Garner, 175 Okla. 325, 52 P. 2d 837; Macsas v. Fishencord, 190 Okla. 407, 124 P. 2d 388. Paragraph 2 of the syllabus in Hart Grocery Co. v. Hunt et al., supra, is particularly applicable herein:

"Where a verdict cannot be justified upon any hypothesis presented by the evidence, it would be unjust to permit it to stand. The jury are not permitted to disregard the law and the evidence and arbitrate the matters submitted to them according to their own theories of what may be right between the parties, which is in reality deciding it merely according to their own whim, and in disregard of the evidence given at the trial." Maly v. Lamberton, 113 Okla. 168, 240 P. 716.

The judgment is reversed and the cause remanded, with directions to dismiss the case.

DAVISON, C.J., and WELCH, GIBSON, LUTTRELL, HALLEY, JOHNSON, and O'NEAL, JJ., concur. ARNOLD, J., dissents.