## NEWSOM v. MEDIS.

No. 34739.   Dec. 26, 1951.

*239 P. 2d 784.*

Percy Hughes, Hobart, for plaintiff in error.

Carmon C. Harris, Oklahoma City, for defendant in error.

BINGAMAN, J.   This action was brought by Thelma Medis, as plaintiff, against Tex Newsom, also known as R. L. Newsom, to recover the balance due under a contract for the sale of real estate, and for punitive or exemplary damages because of duress practiced upon her by the defendant. The trial court overruled defendant's demurrer to the petition and his motion for directed verdict, and submitted the cause to the jury, which returned a verdict in the sum of $1,700 the amount claimed by her to be due from defendant for his breach of the contract of sale, and for punitive damages in the sum of $2,500. Motion for new trial was duly filed and overruled, and defendant appeals.

The defendant contends that the evidence was so insufficient that the trial court should have directed the verdict in his favor. This requires a brief analysis of the evidence.

The plaintiff testified that she was the owner of a residence at 2805 Northwest 26th street, in Oklahoma City, which she listed for sale with defendant, who was engaged in the real estate business, at a selling price of $16,000 or $16,500; that being anxious to effect an early sale so that she could get some money to invest in an oil enterprise, she, shortly after listing the property and being unable to dispose of it at the price specified, told defendant that she would take $14,000 net to her and requested him to try to sell it at that price; that thereupon he advised her that if she was willing to take that price for the property he was

willing to take the property and make some money on it; that she agreed that she would sell the property to defendant for the sum of $14,000, and that defendant would pay her $3,000 down and the balance when the property was sold. It is admitted that there was a loan of $8,000 against the property so that under her version of the transaction she would receive $6,000. She testified that defendant brought a blank deed and a check for $3,000 to her; that sitting in his car, outside the office building where she worked, she signed the blank deed and received the $3,000 check from him, and that at that time he told her that if anything happened to him she would not be fully protected, and thereupon wrote upon the back of one of his business cards the following memorandum:

"Thelma Medis has $3000.00 more coming on deed signed on 2805 NW 26 above the 3000.00 check I have given her this date 10-28-46 /s/ Tex Newsom."

She testified that after this transaction she did not make the oil deal she planned, but signed a contract and put up $500 to buy another property on Cashion street, in Oklahoma City, which she decided to give or turn over to her son. That such deal had to be closed in 30 days from the date she signed the contract and made the deposit, and that on a number of occasions she importuned the defendant to hurry and sell the property which he had purchased from her so that she could obtain the balance of the purchase price. She further testified that he thereafter advised her that he had not bought the property from her but held it under listing only, and that she, having lost the memorandum above set forth, had no evidence that he had agreed to purchase the property; that shortly before the time to complete the deal on the Cashion street property expired he had her execute a note and mortgage on the Cashion street property, threatening that if she refused to do so he would put the deed which she had theretofore signed on the 26th street property on record and she would not get any more money out of the deal; that thereafter he sold the 26th street property for $12,750 and that out of that deal she received the sum of $4,300, which was applied on the purchase price of the Cashion street property. When the defendant produced for her inspection a written contract signed by her, for the sale of the 26th street property at that price, she testified that she never knowingly signed such contract and did not know the purchaser, and that the only way she could explain it was that she signed the contract at the time she executed the note and mortgage, without knowing what it was; that she was not sure how many papers she signed that day, but that she signed them because of defendant's threat as above stated. From her testimony it appears that she was in the habit of buying and selling real estate as a speculative enterprise and that she was employed in the office of an insurance company. She testified that she had handled several deals through the defendant; had great confidence and trust in him and that for that reason entered into the verbal agreement for the sale of her property with him. Shortly before this action was filed she found the memorandum which she had theretofore lost, and had her son's wife make a copy of it and show it to defendant, but defendant still refused to admit that he had purchased the property, and thereupon this suit was filed. The note and mortgage which she had made on the Cashion street property was subsequently paid when that property was sold by plaintiff's son, so that the net amount that she received from the sale of her property was $4,300, leaving a balance due, as she testified, of $1,700.

Plaintiff's testimony as to the making of this contract, the execution of the blank deed, and her testimony as to the making of the note and mortgage and signing of the contract for the sale of her property for $12,750 was controverted by defendant and his witnesses. Defendant denied that he ever agreed

to purchase the 26th street property or that he threatened her in any way to obtain her signature to the note and mortgage and the contract of sale which she admitted she signed. He testified that she was anxious to sell the 26th street property, and that when he advised her they could not get $16,500 for it, she agreed to reduce the price to $14,000 net to her, and shortly thereafter told him that if he received any offer for the property to submit it to her and let her decide whether she would accept the offer or not. His secretary testified that the deed was filled in and signed at the office and that she took plaintiff's acknowledgment thereto; that the name of the grantee and the date were left blank so that the name of the purchaser and the date of the purchase could be filled in, and that plaintiff executed the note and mortgage, and thereafter the contract for the sale of the 26th street property, at friendly meetings where so far as she could tell no threats were made and no coercion of any kind used; and that she never heard anything said between the parties which indicated that plaintiff believed or charged that defendant had purchased her property. Defendant also produced testimony showing that other real estate men were given the right to sell the property, but that it was finally sold by one of his salesmen. Defendant testified that when the note and mortgage for $3,000 was executed by plaintiff it was executed and acknowledged with the understanding that the 26th street property had been sold and he would be required to deliver the deed which she signed, and that this would leave him without security for his money, and that at her request he made the note payable at the rate of $50 per month, so that she could pay it off in that manner.

The defendant urges that the evidence was wholly insufficient to show that the note and mortgage and the contract for the sale of the 26th street property, executed by plaintiff, were executed under duress. In support of this statement he cites Britton v. Lombard, 52 Okla. 41, 152 P. 590; Cole v. Ulrey, 185 Okla. 90, 90 P. 2d 430; Lacy v. Edwards, 170 Okla. 458, 41 P. 2d 64, and other cases holding that it is necessary to show that defendant was guilty of one or more of the acts set out in 15 O. S. 1941 §55, before the jury was warranted in finding that such instruments were obtained by duress. However, in Samuels Shoe Co. v. Frensley, 151 Okla. 196, 3 P. 2d 216, we said:

" 'Duress exists when one, by an unlawful act of another, is induced to make a contract or perform some act under circumstances which deprive him of the exercise of his free will.' Knight v. Brown, 137 Mich. 396, 100 N. W. 602, 603, and other authorities from many states."

In that case, we also said:

"To deprive one of his will and understanding by reason of threats or other unlawful means, so that a note thus obtained is not his free and voluntary act, constitutes duress."

It thus appears that in that case we relaxed the rule that the plaintiff must show that the defendant committed one or more of the specific acts of duress set forth in the statute, and adopted the more modern rule announced in 17 C. J. S. p. 532, §173.

In Sinclair Refining Co. v. Roberts, 201 Okla. 358, 206 P. 2d 193, we approved and followed the decision in Samuels Shoe Co. v. Frensley, supra.

While the evidence was conflicting and the testimony of plaintiff was in some respects weakened by her admission of the trust and confidence she reposed in defendant, we think it was sufficient to justify the trial court in submitting the case to the jury.

It is settled law in this state that this court will not set aside the verdict of a jury where there is any evidence reasonably tending to support the verdict, and the verdict has been approved by the trial court. Britt v. Doty, 195 Okla. 620, 161 P. 2d 521; H. F. Wilcox Oil & Gas Co. v. Jamison, 199 Okla.

691, 190 P. 2d 807, and cases cited in Oklahoma Digest, App. & Error, Key No. 1005 (2).

The question of whether the action brought by plaintiff was an action for the breach of an obligation not arising from contract, or whether it was an action for the breach of an obligation arising from contract, is not presented by the assignments of error, and no contention is made by defendant that the case was not one in which punitive damages could properly be assessed if the evidence was sufficient to take it to the jury. We therefore do not pass upon that question.

Affirmed.

HALLEY, V. C. J., and WELCH, CORN, GIBSON, DAVISON, JOHNSON, and O'NEAL, JJ., concur.