**UNITED STATES of America,
Plaintiff,**

v.

**Pat BELL and Hazel Bell, Defendants.**

**Civ. No. 5970.**

United States District Court
N. D. Oklahoma.

July 15, 1966.

John M. Imel, U. S. Atty., Sam E. Taylor, Asst. U. S. Atty., Tulsa, Okl., for plaintiff.

Robert J. Woolsey, Tulsa, Okl., for defendants.

## FINDING OF FACTS AND CONCLUSIONS OF LAW

BARROW, Chief Judge.

### FINDING OF FACTS

This is a civil action for money judgment on four separate promissory notes, executed and delivered to the Farmers Home Administration pursuant to the provisions of the Special Livestock Loan Act (67 Stat. 149). The first and second of said promissory notes were executed by the defendants, Pat Bell and Hazel Bell, while the third and fourth promissory notes were executed only by the defendant, Pat Bell. The execution and delivery of said notes have heretofore been admitted by the defendants.

The first note for the sum of $32,000.-00 was made by the defendants on September 22, 1955, pursuant to their application therefor of September 20, 1955. The plan of operations of the defendants, as set out in their application, provided that they would purchase 250 head of cattle for $16,000.00 and that when they sold the 189 head of cattle they then owned and possessed, the proceeds would be applied on their prior loan from the Farmers Home Administration on which there was then a balance due of $16,060.00. It was further provided in said plan that it should be flexible enough to meet changing conditions and provided that it was based upon "his use of the land presently operated with some purchased feed," and that at a later time an additional loan might be made to place a number of calves on a wheat pasture on a grazing privilege basis. The plan specifically provided that the defendants would comply with all conditions agreed upon in connection with the loan and would use the proceeds of the loan for the purposes for which they were advanced.

At the time the defendants obtained the above stated $32,000.00 loan, they were operating 900 to 1,000 acres which would only support approximately 100 head of cattle. They already owned 189 head of cattle and with the proceeds of the loan purchased approximately 300 head of cattle for $20,000.00 or more instead of the 200 head of cattle for $16,000.00 as set forth in their plan. Further, since they did not raise the feed necessary to full-feed cattle, they purchased with the loan proceeds the feed to full-feed a part of the 189 head they owned prior to obtaining the loan.

In March 1956, certain state officers of the Farmers Home Administration advised the Pawnee County Special Livestock Loan Committee that where a borrower did not provide or produce the bulk of the feed required to full-feed his cattle, it was contrary to the regulations governing Special Livestock

Loans to use the loan proceeds for the purchase of cattle and feed to full-feed such cattle. The county committee was also advised that another loan should not be made to the defendants unless they agreed to sell their cattle in September 1956.

Thereafter on March 13, 1956, the defendants, Pat Bell and Hazel Bell obtained the second loan of $5,750.00 from the Farmers Home Administration. This loan was made for the purpose of permitting the defendants to lease a wheat pasture on which to place some of their cattle. This loan was made pursuant to the application of the defendants, which application contained a provision that the defendants would sell their cattle in September 1956. While certain state officers of the Farmers Home Administration so advised the Pawnee County Special Livestock Loan Committee, there is no evidence that such Committee did not agree that such a provision should be specified. Likewise, there is no evidence that the Committee would have approved an application without such a provision or that it was made because of the insistence or coercion of the state officers of the Farmers Home Administration. The defendant, Pat Bell, testified that about anybody he contacted, the County Supervisor or other agents of the state office of the Farmers Home Administration, told him that the sale of the cattle in September 1956 was a condition of granting the loan.

In July or August 1956, approximately 500 acres of pasture burned and, in order to protect its interest in the defendants' cattle, a $2,000.00 loan was made to the defendant Pat Bell on August 21, 1956, for the purpose of purchasing protein feed for the cattle, then on grass pasture, to carry them for a period of 30 days. Thereafter, a strike of packing company employees depressed the price of cattle and on September 25, 1956, the defendant, Pat Bell, was granted a $1,000.00 loan with which to buy additional feed and the date for the sale

of his cattle was extended to October 16, 1956.

On October 8, 1956, the defendant, Pat Bell, sold all of his cattle and applied the proceeds to payment of the above described notes, leaving a balance due of $8,621.42 plus interest.

## CONCLUSIONS OF LAW

The Special Livestock Loan Act, involved in this action, was adopted to assist farmers to meet an emergency drought situation existing in the Central-South area of the United States. Rules and regulations were promulgated and adopted by the Secretary of Agriculture pursuant thereto to govern the determination of eligibility of applicants to receive aid under the Act.

The Act delegated to the Special Livestock Loan Committee the exclusive authority to approve loans thereunder, such authority to be exercised in accordance with the rules and regulations thereof. 6 CFR Section 384.4.

While Pawnee County Special Livestock Loan Committee violated the regulations in approving a plan which permitted the defendants to materially expand their normal operations and permitting them to use the proceeds of the loan to both purchase and full-feed cattle, the defendants violated the terms of their plan pursuant to which the loan of $32,000.00 was made by purchasing 300 head of cattle instead of only 250 head of cattle. The defendants also materially expanded their normal operations contrary to the regulations by retaining the 189 head of cattle which they had on hand when they first obtained the $32,000.00 loan. 6 CFR Sections 384.2(a) and 384.5(9).

It was not wrongful for state officers of the Farmers Home Administration to advise the Committee that, where a borrower did not provide or produce the bulk of the required feed, it was contrary to regulations for him to use loan proceeds for both the purchase of cattle and full-feeding of them. This is a correct interpretation of the regula-

tion, and such advice might prevent future violations thereof.

The defendants were in need of additional grazing land and feed in March and were seeking another loan from the Government. Their precarious situation and financial embarrassment were not the result of any coercive acts of the Government, but the result of their own actions in buying more cattle than their land and resources would support. If the Committee had refused to extend them further credit, which it would have been justified in doing because of their failure to follow the plan set out in their former application, the defendants would have had to sell their cattle in the Spring. The granting of additional credit to them, even with the proviso that they sell their cattle in September, gave them a breathing space—an opportunity to carry their cattle until they had an opportunity to gain additional weight by summer grazing. Under existing circumstances, it appears that September was the logical time for them to sell their cattle as their March loan would carry them no farther than September, and it would then be the end of the grazing season and before they would have to begin buying feed for their cattle.

■■ The Government was not bound to continue to make loans to the defendants or either of them upon request, just because the plan in the first application provided that it should be flexible enough to meet changing conditions. Nor does the fact that the Act contemplates that loans may be extended, bind the Government to make additional loans upon application, which appears to be the contention of the defendants in their supplemental brief.

■ The requirement that the cattle must be sold in September was not economic duress or business compulsion. One of the elements of actionable duress is that the circumstances permitted the person coerced no other alternative. United States v. Bethlehem Steel Corp., 315 U.S. 289, 62 S.Ct. 581, 86 L.Ed. 855. The defendants had other alternatives. They could have reduced their herd to the number they could carry on their own land, or they could have sold their cattle and applied the proceeds on their indebtedness. Under Oklahoma law duress exists when the *unlawful* act of another induced a person to make a contract, or perform some act, under circumstances depriving him of the exercise of free will. Sinclair Refining Company v. Roberts, 201 Okl. 358, 206 P.2d 193; Newsom v. Medis, 205 Okl. 574, 239 P.2d 784. The Committee did not act unlawfully in requiring that the cattle be sold in September.

■ Neither was there anything unconscionable nor morally wrong in requiring the cattle to be sold in the Fall. As above stated, it appeared to be the best time for the defendants to sell their cattle. It was near the end of the grazing season and the defendants did not have the resources to winter their cattle. There was no assurance that cattle prices would be better at a later date. They could not have carried the cattle through the winter without another large loan from the Government, which would not have been sound for the borrower or economically safe for the Government.

■ The Oklahoma statutes governing foreclosure of mortgages do not apply since there was no foreclosure of the chattel mortgages involved.

■ However, in March when the defendants applied for the $5,750.00 loan, the Government would have been justified in considering its loan in jeopardy and proceeded under the "insecurity clause" of its chattel mortgages to foreclose or take the mortgaged property because there had been a substantial change of condition. When the $32,000.00 loan was made, the defendants had 189 head of cattle and the proceeds of the $32,000.-00 loan to use for their cattle operations. In March, they had more than 400 head of cattle, no feed and no money, and they owed the Government more than $43,000.-00.

The plaintiff, therefore, is entitled to judgment against the defendants, Pat

Bell and Hazel Bell, for the principal sum of $5,864.07 with interest thereon at the rate of 5% per annum from the 22nd day of March 1966, together with the sum of $2,633.52 accrued interest and for the cost of this action. The plaintiff further is entitled to judgment against the defendant, Pat Bell, for the principal sum of $2,757.35 together with interest thereon at the rate of 5% per annum from the 22nd day of March 1966, together with the sum of $1,259.75 accrued interest plus the cost of this action.

Attorney for plaintiff shall prepare judgment in accordance herewith.