**UNITED STATES COURT OF APPEALS**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

Patrick J.  Fisher, Jr.                                                    Elisabeth A. Shumaker
Clerk                                                                      Chief Deputy Clerk

November 25, 1997


TO:    All recipients of the captioned opinion

RE:    96-5150 & 96-5167, Strickland v. AT&T
       Filed November 4, 1997


Please be advised of the following correction to the captioned decision:

In the attorney designation section on the first page of the opinion, counsel are reversed.  In fact, Mr. Neff and Mr. Brune appeared for Defendant-Appellant; Mr. Hoster and Ms. Eden appeared for Plaintiff-Appellee.

Please make the appropriate correction.

Very truly yours,

Patrick Fisher, Clerk


Susie Tidwell
Deputy Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 4 1997**

**PATRICK FISHER**
**Clerk**

STRICKLAND TOWER
MAINTENANCE, INC., an Oklahoma
Corporation,

       Plaintiff-Appelle, Cross-
       Appellant,

  v.

AT&T COMMUNICATIONS, INC., a
Delaware Corporation,

       Defendant-Appellant, Cross-
       Appellee.

No. 96-5150 & 96-5167

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D. Ct. No. 94-CV-1015)**

Craig W. Hoster (Barbara J. Eden with him on the briefs), Baker & Hoster, Tulsa,
Oklahoma, appearing for Plaintiff-Appellee.

Jonathan C. Neff (Kenneth L. Brune with him on the briefs), Brune & Neff, P.C.,
Tulsa, Oklahoma, appearing for Defendant-Appellant.

Before PORFILIO, ANDERSON, and TACHA, Circuit Judges.

TACHA, Circuit Judge.

       Defendant AT&T Communications, Inc. appeals from an adverse jury

verdict and award of attorney's fees in this contract action. Plaintiff Strickland Tower Management ("STM") cross appeals for, among other things, prejudgment interest on its damages. We take jurisdiction of this matter pursuant to 28 U.S.C. § 1291. We now affirm in part and reverse in part.

## Background

For 25 years preceding this dispute, STM performed services for AT&T on a number of different contracts. These contracts were STM's largest source of revenue. From 1988-91, payments from AT&T constituted 90 percent of STM's total income.

In the summer or fall of 1990, STM and AT&T discussed the possibility of STM's overseeing the burying of a 46-mile-long fiber-optic cable in the St. Louis, Missouri area. As part of its work on the project--known as the Florissant-Hillsboro Lightguide Project--STM would be required to provide many services, including oversight of the project's construction crews. During the preliminary discussions, an AT&T representative informed STM that STM could use "recorders" instead of "inspectors" to supervise the crews. Recorders are a less skilled, and consequently less expensive, class of laborers than inspectors. STM relied on AT&T's comment about recorders in submitting its proposal for the project.

In December of 1990, the parties signed a contract for STM's services on

the Lightguide Project. The contract set STM's compensation at 23.5 percent of the "total project cost." The contract did not define "total project cost" but did place responsibility for calculating the total cost with AT&T. The contract also contained an incentive; STM would receive an additional 1 percent of the total project cost if STM kept that cost at less than 2 percent above the "bid price."

In 1991, after the project had begun, AT&T representatives met with STM authorities. At that meeting, AT&T declared that they wanted inspectors to be used on the job, not recorders. AT&T also demanded that an AT&T representative manage the project from that time forward. This demand conflicted with the terms of the contract, which gave STM management responsibility over the project. According to Clyde Strickland, owner of STM, AT&T assured STM at the meeting that STM would receive future work to cover any losses resulting from the proposed changes.[1] STM officials interpreted this comment as a threat that if STM did not make the changes, AT&T would not give them future work. STM then agreed to the changes.

The parties met in Tulsa in August 1992 after STM had completed the project. There, AT&T informed STM that the total project cost was $6,514,891. AT&T subsequently compensated STM based on that figure. Later, STM

---

[1]An AT&T representative, Mr. David Seals, denied that he ever made such an offer to Strickland and STM. We find this factual dispute irrelevant to AT&T's appeal; thus, we assume that AT&T made the statement.

discovered an internal AT&T accounting record, known as the "FD-10," which indicated that the total cost of the Lightguide Project was actually $7,229,874. AT&T accounts for the difference between the figure it gave at the Tulsa meeting and the higher one in the FD-10 by noting that the FD-10 includes many of AT&T's internal expenses that the parties did not intend to include in the contract's "total project costs."

STM filed suit against AT&T based on a variety of contract, fraud, and tort claims. The district court granted AT&T summary judgment on all but three of STM's claims, which went to trial. First, STM asserted that AT&T committed actual fraud by misrepresenting the "total project cost." Second, STM asserted that AT&T breached the written contract by paying STM 23.5 percent of $6,514,891 rather than 23.5 percent of $7,229,874, the real "total project cost." Finally, STM asserted that AT&T used economic duress to force STM to agree to use inspectors and hand control over the project to AT&T.

The jury found against STM on actual fraud but awarded it $470,601 in restitutionary damages on the economic duress claim and $172,973 for AT&T's breach of the written contract. The district court then denied AT&T's motion for judgment as a matter of law on economic duress and breach of contract. The district court also granted STM $118,690 in attorney's fees relating to the breach of contract claim but denied STM's request for prejudgment interest.

AT&T presents three major issues on appeal and STM raises one major issue on cross appeal. AT&T appeals the district court's refusal to grant it judgment as a matter of law on STM's claims of economic duress and breach of written contract. Also, if we do not grant AT&T judgment as a matter of law for breach of contract, AT&T urges this court to reverse the award of attorney's fees related to that claim. In its cross appeal, STM asks us to award it prejudgment interest on the jury verdicts for economic duress and breach of contract. The parties presented several additional arguments in their appeals. We address those arguments after discussing the four issues noted above.

## Discussion

The district court applied Oklahoma law to this case and neither party challenges that finding on appeal. Therefore, we accept the view of the district court that Oklahoma law applies. See Jordan v. Bowen, 808 F.2d 733, 736 (10th Cir. 1987) ("Appellants who fail to argue [an] issue in their brief are deemed to have waived [it] on appeal.").

## I. AT&T's Appeals for Judgment as a Matter of Law

### A. Standard of Review

First, we address AT&T's appeal of the district court's denial of judgment as a matter of law on both the economic duress claim and the breach of written contract claim. "We review de novo the district court's determination of a motion

for judgment as a matter of law, applying the same standard as the district court." Mason v. Oklahoma Turnpike Authority, 115 F.3d 1442, 1450 (10th Cir. 1997). A party can obtain judgment as a matter of law in its favor "only if the proof is all one way or so overwhelmingly preponderant in favor of the movant as to permit no other rational conclusion." Conoco Inc. v. Oneok, Inc., 91 F.3d 1405, 1407 (10th Cir. 1997) (quotations omitted). Using this standard, a court will not substitute its conclusions for that of a jury but must enter judgment as a matter of law "if 'there is no legally sufficient evidentiary basis . . . with respect to a claim or defense . . . under the controlling law.'" Mason, 115 F.3d at 1450 (quoting Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, 1546-47 (10th Cir. 1996)).

**B. Economic Duress**

We hold that under the controlling Oklahoma law, STM failed to provide legally sufficient evidence of economic duress. The doctrine of economic duress grew from a narrow band of cases that provided relief from contracts secured through actual imprisonment or threats to the reluctant contracting party's life or limb. See John D. Calamari & Joseph M. Perillo, CONTRACTS § 9-2 (3d ed. 1987). The doctrine has evolved into one that seeks to "impos[e] . . . certain minimal standards of business ethics in the market place." Centric Corp. v. Morrison-Knudsen Co., 731 P.2d 411, 413 (Okla. 1986). One must read this

statement in light of the doctrine's historically limited scope and the fact that ordinary "[h]ard bargaining . . . [is] acceptable, even desirable, in our economic system" and should not be discouraged by the courts. Id. at 413-14.

In Oklahoma, economic duress allows a party to avoid a contract that it has entered if a "wrongful act [of the other party was] sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure." Id. at 416. As that rule suggests, a party seeking to prove economic duress must prove that the defendant committed a wrongful act. More importantly, however, the plaintiff must also show a causal relationship between the bad act and the contract at issue. The defendant's bad act, not something else, must have forced the plaintiff to sign the burdensome contract. As the Centric court stated, "the coercing party has been subjected to legal sanctions if . . . its actions or threats caused impaired bargaining power. . . ." Id. (emphasis added).

A litigant cannot, therefore, make out a claim of economic duress by alleging merely that the opposing party took advantage of her weak negotiating position or because of "business necessities." Id. at 417; accord Bell v. United States, 380 F.2d 682, 686 (10th Cir. 1967) ("'The assertion of duress must be proven by evidence that the duress resulted from defendant's wrongful and oppressive conduct and not by plaintiff's necessities.'" (quoting W.R. Grimshaw

Co. v. Nevil C. Withrow Co., 248 F.2d 896, 904 (8th Cir. 1957))).  An independent contractor's dependence on one particular source of employment is just such a business necessity.  That dependence may allow the employer to squeeze uncomfortable concessions out of the contractor during business negotiations.  It does not, however, result from any wrongful act of the employer.  Therefore, it is not the basis for avoiding any resulting contracts.

In Sinclair Refining Co. v. Roberts, 206 P.2d 193 (Okla. 1949), cited by the Centric court, 731 P.2d at 416 n.16, a distributor had continually agreed to decrease its contract prices for one wholesaler whenever the wholesaler threatened to remove its business.  The court found that the distributor's weak bargaining position did not justify recision of the modified contracts.  See Sinclair Refining, 206 P.2d at 198.

This case is very similar to Sinclair Refining.  Here, STM alleges that AT&T threatened to remove its business if STM did not hire inspectors and allow AT&T to take control.  STM agreed to those changes because of its financial dependence on AT&T.  STM agreed to the modifications "because of the volume of work that [it was] doing for [AT&T]."  Pretrial Conf. at 12.  STM "had no reasonable economic choice" and made concessions because of "the preponderance of the work, over 90 percent, that [it was] doing for AT&T and had done for such a time period."  Id. at 12-13.

- 8 -

Even if AT&T engaged in wrongful conduct by misrepresenting the quality (and hence, the cost) of labor that it would request from STM, that misrepresentation was not a bad act that <u>led to</u> the contract modification. If AT&T had been a small company with whom STM did not plan to work with again, STM may have denied AT&T's request for more expensive labor, finished the job, and been on its way.

On this project, the situation was different. STM's business dependence on AT&T drove STM's decisions. STM readily admits that point, and there is no evidence to the contrary. We hold, therefore, that because duress imposed by one's own business necessities cannot support a claim of economic duress in Oklahoma, there is no legally sufficient evidentiary basis with respect to this claim under the controlling law. <u>See</u> <u>Mason</u>, 115 F.3d at 1450. We therefore reverse the district court and grant AT&T judgment as a matter of law on the claim of economic duress.

**C. Breach of Written Contract**

We next address the district court's denial of AT&T's motion for judgment as a matter of law on STM's claim of breach of written contract. We review the district court's decision de novo, using the standard of review set forth above. Here, we affirm the district court's decision, as STM provided evidence upon which a juror could make reasonable inferences in STM's favor.

The parties' contract required AT&T to pay STM a percentage of the "total project costs." In its breach of contract claim, STM sought 23.5 percent of the difference between the $7,229,874 total cost figure contained in the FD-10 and the $6,514,891 cost that AT&T used in setting STM's compensation. To assess whether AT&T is entitled to judgment as a matter of law, we must examine STM's evidence that the "total project cost," as used in the contract, was $7,229,874.

The contract did not define "total project cost." The district court appropriately ruled that because of the term's ambiguity, parol evidence could be admitted to illuminate what the parties meant by it. Tr. at 67; see, e.g., United States v. Federal Ins. Co., 634 F.2d 1050, 1051 n.1 (10th Cir. 1980). STM's most persuasive evidence on this point was the FD-10 itself, an AT&T accounting record of the Lightguide Project. The FD-10 is a "Financial Project Completion Report." It shows a final cost of $7,229,874.74 for the Lightguide Project. The FD-10 included AT&T's "internal costs," including more than $500,000 attributable to AT&T's internal allocation of interest on capital.

On appeal, AT&T argues that we should grant it judgment as a matter of law because there is no evidence from which a juror could infer that the FD-10, particularly the "internal costs" tabulated in it, reflected what the parties meant by "total project cost." The FD-10 itself is evidence, however, and some pieces of

evidence draw their own inferences. The mere fact that AT&T produced such a

document and titled it a "Financial Project Completion Report" could indicate to a

reasonable person that the document reflected AT&T's view of the total project

costs. Other factors bolster that conclusion. Most importantly, the contract gives

AT&T responsibility for tracking the total project costs. Because AT&T

produced no other accounting record of the Lightguide Project, a juror could

reasonably conclude that the FD-10 was AT&T's tracking of the costs under the

contract. Furthermore, Dick Lowe, an employee of STM, testified that the parties

considered both AT&T's internal and external costs to be part of the total project

costs. Tr. at 485-86. Mr. Lowe did not mention allocation of interest on capital

specifically, but he did state that the parties considered all of AT&T's internal

costs to be included in the total project cost. See id. at 490-91. This evidence on

the record, and the reasonable inferences that a juror could draw from it, suffice

to prevent judgment as a matter of law for AT&T.

AT&T alternatively argues that it is entitled to judgment as a matter of law

in spite of the apparent sufficiency of the above evidence. According to AT&T,

STM released AT&T from its contractual obligation to pay STM a percentage of

the total project costs by agreeing to an accord and satisfaction at the Tulsa

meeting. Revisiting the standard for judgment as a matter of law, we note that

AT&T's accord and satisfaction defense will not be dispositive unless "the

evidence points but one way" and no reasonable juror could find that the accord and satisfaction did not take place.  Mason, 115 F.3d at 1450.

Under Oklahoma law, an accord and satisfaction occurs when parties agree to discharge each other's obligations under an old contract and perform under a new contract.  See FDIC v. Inhof, 16 F.3d 371, 374-75 (10th Cir. 1994).  There must be "'a substitution by agreement of the parties of something else in place of the original claim.'"  Id. at 374 (citation omitted).  AT&T contends it is entitled to judgment as a matter of law because the parties settled on a dollar amount for a final payment at the Tulsa meeting.  This argument is unavailing.  For an accord and satisfaction to have taken place, the parties must have agreed that AT&T would give STM something different from the original contract obligation.  Id.

There is significant evidence in the record that the parties did not make a substitute agreement in Tulsa, and that they believed the original contract was still in force.  STM's final invoice to AT&T is denominated the "[f]inal invoice for project management on the Florissant-Hillsboro Fiber Cable, per exhibit B in our contract, dated Dec. 3, 1990."  Appellant's. App. Tab 17 at 2 (emphasis added).  Further, when asked on direct examination whether the parties had "settled" on STM's compensation at the Tulsa meeting, Philip Gustin, a STM employee, responded, "According to the contract, yes."  Tr. at 1322.  A juror could reasonably infer from this evidence that the parties did not agree to release

each other from the original contract terms at the Tulsa meeting.  We therefore affirm the district court's denial of judgment as a matter of law.

### III.  Attorney's Fees Under Section 936

We have vacated the verdict in favor of STM on economic duress, and therefore, we do not need to consider STM's argument on cross appeal that the district court should have granted attorney's fees for STM's counsel's work on that claim.  Cf. Thompson v. Independent Sch. Dist., 886 P.2d 996, 998 (Okla. 1994) (holding that an award of attorney's fees is "automatically vacated once the underlying judgment upon which it had been based was reversed.").

STM's breach of contract verdict, however, remains.  On that claim, the district court awarded STM $118,690 in attorney's fees as a "prevailing party" under Okla. Stat. Ann. tit. 12, § 936.  We review de novo any legal conclusions that provide a basis for an award under § 936.  Tulsa Litho Co. v. Tile & Decorative Surfaces Magazine Publ'g, Inc., 69 F.3d 1041, 1043 (10th Cir. 1995). The determinations of which party prevailed in the litigation and the reasonableness of the attorney's fees award, however, fall within the discretion of the trial judge and are reviewed under an abuse of discretion standard.  Arkla Energy Resources v. Roye Realty & Developing, Inc., 9 F.3d 855, 865-66 (10th Cir. 1993) (construing § 936 and citing, among others, Wilkerson Motor Co. v. Johnson, 580 P.2d 505, 509 (Okla. 1978)).

AT&T does not argue that STM does not qualify as a "prevailing party" for purposes of § 936. Nor does AT&T question the reasonableness of the district court's attorney's fee award to STM. Consequently, the only issue we address on appeal is the district court's conclusion that § 936 applies to STM's breach of contract claim, a determination that we review de novo.

Section 936 provides: "In any civil action to recover on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services . . . , the prevailing party shall be allowed a reasonable attorney fee." OKLA. STAT. ANN. tit. 12, § 936 (West 1988). In Russel v. Flanagan, 544 P.2d 510, 512 (Okla. 1975), the Oklahoma Supreme Court interpreted § 936 narrowly, finding that the phrase "contract relating to" did not modify "labor or services." "As a result, to recover under section 936, a prevailing party on a labor or services contract claim must demonstrate that the claim is for labor or services rendered, not just that the claim relates to the performance of services rendered." Merrick v. Northern Natural Gas Co., 911 F.2d 426, 434 (10th Cir. 1990). Even with this limitation, however, it is undisputed that the statute applies if recovery is sought for labor and services where there has been a failure to pay for labor or services rendered. Id. (quoting Burrows Constr. Co. v. Independent Sch. Dist., 704 P.2d 1136, 1138 (Okla. 1985)).

- 14 -

STM complains that AT&T paid less than the contract required for its management of the Lightguide Project. It alleges, in the plainest terms, a failure to pay for services rendered. Thus, the attorney's fees statute applies to the breach of contract claim. We therefore affirm the district court's award of attorney's fees on this claim.

## IV. Prejudgment Interest

In its cross-appeal, STM challenges the district court's denial of prejudgment interest on the jury verdicts for economic duress and breach of contract. Having reversed the economic duress award, we consider here prejudgment interest only on the breach of contract verdict.

A federal court sitting in diversity applies state law, not federal law, regarding the issue of prejudgment interest. See McNickle v. Bankers Life and Cas. Co., 888 F.2d 678, 680 (10th Cir. 1989). The relevant Oklahoma statute permits the recovery of prejudgment interest on "damages certain, or capable of being made certain by calculation." OKLA. STAT. ANN. tit. 23 § 6 (West 1987). This court has stated that it will reverse a district court's finding that damages were not certain only if that finding is clearly erroneous. See Transpower Constructors v. Grand River Dam Auth., 905 F.2d 1413, 1422 (10th Cir. 1990) (construing § 6).

It is well established that a damage award is not certain for purposes of the

Oklahoma statute "unless the amount of recovery is liquidated or capable of ascertainment by calculation or resort to well-established market values." Sandpiper North Apartments, Ltd. v. American Nat'l Bank and Trust Co., 680 P.2d 983, 993 (Okla. 1984). Therefore, if the fact-finder must weigh conflicting evidence in order to determine the precise amount of damages due to the plaintiff, then a court cannot grant prejudgment interest. Withrow v. Red Eagle Oil Co., 755 P.2d 622, 625 (Okla. 1988); Liberty Nat'l Bank and Trust Co. v. Acme Tool Div., 540 F.2d 1375, 1383 (10th Cir. 1976) (noting that Oklahoma courts do not award interest when a trial is necessary to determine the amount due).

This case presented the jury with at least two significant factual questions regarding the amount of damages. The contract set STM's compensation at 23.5 percent of the total cost of the project; if STM kept costs below a certain level, however, the contract obliged AT&T to pay STM 24.5 percent of the costs. At trial, STM argued that if AT&T had not interfered in the project, STM could have contained costs enough to earn the bonus percentage point. The damage calculation turned, in part, on this factual determination by the jury. Also, as noted above, the definition of "total project costs" was a significant issue at trial. In this suit, therefore, the damage award turned on the jury's factual determination of what the parties meant by "total project costs." In light of these facts, the district court did not commit clear error in finding the damages

uncertain.  We therefore affirm the district court's denial of prejudgment interest.

## V.  Other Issues on Appeal

AT&T offers three reasons why we should grant AT&T a new trial.  First, it contends that the trial court set unfair time limits on the presentation of AT&T's case-in-chief and on AT&T's cross-examination of STM's witnesses. We review this decision under an abuse of discretion standard.  See Gracia v. Lee, 976 F.2d 1344, 1345 (10th Cir. 1992).  That standard is particularly deferential where, as here, the decision implicates the district court's fundamental control over the trial process.  Id.  A district court's decision to limit evidence in the interest of judicial administration will not be overturned on appeal absent a manifest injustice to the parties.  Id. (quoting Thweatt v. Ontko, 814 F.2d 1466, 1470 (10th Cir. 1987)).  Here, in limiting the time for cross examination to that used on direct, the district court showed a willingness to accommodate when necessary.  See, e.g., Tr. at 765 (allowing extra time for AT&T's cross examination of an accountant called by STM).  Furthermore, AT&T offers no explanation of how it would have been aided by having more time on cross examination, or in the presentation of its case in chief.  No injustice is manifest on this record; the district court did not abuse its discretion in limiting the length of the trial.

Second, AT&T contends that the district court improperly precluded one of

its expert witnesses from using a particular document to refresh his memory. We review this decision as well for abuse of discretion. See United States v. Johnson, 4 F.3d 904, 915 (10th Cir. 1993). A court may withhold a writing from a witness if the court believes that the witness is testifying directly from it rather than using it with the legitimate intent of refreshing his own, independent recollection. Cf. Hall v. American Bakeries Co., 873 F.2d 1133, 1136 (8th Cir. 1989) (stating that "[i]t is error to allow a witness to testify at trial from prepared notes under the guise of refreshing recollection"). In this case, the witness was only vaguely familiar with the document that he was looking at, and the record suggests that the district court feared he simply would read its contents into evidence. Tr. at 1423 ("I'm not going to have him read [the document] into evidence."). The district court did not abuse its discretion in keeping the writing from the witness.

Third, AT&T argues that the district court erred in sending the issue of actual fraud to the jury. Although the jury did not find against AT&T on the actual fraud claim, AT&T contends that the presence of that issue "tainted" the jury by creating an inference that AT&T had acted wrongly. Even if the actual fraud claim should not have gone to the jury, AT&T still fails to cite any authority for its position that one claim can "taint" others in the jury room and require a new trial on those tainted issues. Rather, we have said that when a

district court mistakenly submits a claim to a jury that results in no damages, the mistake should be disregarded. See First Security Bank v. Taylor, 964 F.2d 1053, 1057 (10th Cir. 1992); Fed.R.Civ.P. 61 (stating that a "court at every stage of the proceeding must disregard any error . . . which does not affect the substantial rights of the parties.")).

Finally, in its cross appeal, STM asks this court to reverse the district court's decision to exclude evidence of two different items of damages predicated on STM's economic duress claim. Having granted judgment as a matter of law to AT&T on the economic duress claim, we need not address this last issue.

## CONCLUSION

We find that AT&T is entitled to judgment as a matter of law on STM's claim of economic duress. The district court properly denied, however, judgment as a matter of law on STM's breach of contract claim. Because that claim is one for payment of services rendered, the district court was also correct to award STM attorney's fees. Finally, we uphold the district court's finding that prejudgment interest should not be granted in this case. In accordance with the above, we affirm in part and reverse in part.