## HUBBARD v. JONES.

No. 14045—Opinion Filed June 17, 1924.

Rehearing Denied Sept. 16, 1924.

Second Rehearing Denied Oct. 14, 1924.

**1. Payment—Recovery of Payment for Release of Lease Wrongfully Put on Record.**

Where a lessee receives an oil and gas mining lease and agrees to return said lease to the lessor in the event of failure by the lessee to commence a well within the 90 days from the date of the lease on some part of a block of acreage in which the leased land is included and where the lessee entirely abandons the drilling of said well, and six months after such abandonment and refusal to drill he places said lease on record without having returned the unrecorded lease to the lessor, and then demands the payment of a sum of money before he will release said lease of record, and such sum of money is paid by the lessor, the lessor may maintain an action to recover the amount so paid.

**2. Same—Judgment Sustained.**

Record examined, and held, that the judgment of the trial court is not contrary to law and is reasonably supported by the evidence in the case.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No 5.

Error from District Court, Love County; B. C. Logsdon, Judge.

Action by J. N. Jones against G. E. Hubbard, to recover a money judgment. Judgment for plaintiff, and defendant appeals. Affirmed.

Wilkins & Wilkins, for plaintiff in error.
Keller & Cameron, for defendant in error.

Opinion by FOSTER, C. This case presents the question of whether or not a lessor in an oil and gas lease, having paid a sum of money to the lessee for a release of the lease, can afterwards maintain an action for the recovery of the money thus paid. It appears that on the 2nd day of March, 1921, the plaintiff in error, G. E. Hubbard, received an oil and gas mining lease from the defendant in error, J. N. Jones, covering 170 acres of land in Love county, Okla., on condition that he would drill a test well on some part of a block of 3,500 acres, in which the 170 acres were included, within 90 days from the date of the lease, and in the event of a failure to commence said well within the time specified, the lease to be returned to the lessor.

The defendant in error, as plaintiff in the court below, filed a suit on the 27th day of February, 1922, against the plaintiff in error, as defendant, alleging, in substance, that the plaintiff in error had failed to return said lease after abandoning and repudiating his contract to drill the well, whereby he was compelled to pay and did pay the sum of $170 to obtain an instrument releasing said lease of record, and demanded judgment for the sum so paid.

The plaintiff in error answered, admitting payment of the sum of $170, but alleged the said payment was voluntary and for a valid consideration.

The parties will be hereinafter referred to as they appeared in the trial court.

The cause proceeded to trial before the court and a jury, resulting in a judgment for the plaintiff in the sum of $170, and for costs. Motion for a new trial was filed and overruled, and the defendant brings the cause regularly on appeal to this court on petition in error and case-made.

Several errors are assigned as grounds for reversal. The first proposition relied upon is that the undisputed testimony shows that the plaintiff, with full knowledge of all the facts surounding the contract, voluntarily paid to the defendant the sum of $170 for the release of said oil and gas lease, and having voluntarily paid the same without any fraud or deceit on the part of the defendant, cannot recover back the money so paid.

This proposition assumes, however, a state of facts not in evidence. It assumes the existence of a valid and subsisting oil and gas mining lease, executed by the plaintiff to the defendant at the time the money was paid. This state of facts is not borne out by the evidence as disclosed by the record before us.

There was testimony introduced tending to show that the delivery of the oil and gas lease by the plaintiff to the defendant was not to become final and irrevocable until the defendant had commenced a well within 90 days from the date of the lease on some part of a block of 3,500 acres, in which the lands leased were included. That it was never intended that said lease should be recorded until the well had been commenced, and that the conduct of the defendant in recording plaintiff's lease long after he had entirely abandoned the drilling enterprise, torn up the drilling contract, and returned practically all of the other leases which he had received from other owners of the block of acreage under the same circumstances in which he received the lease of the plaintiff, amounted to a breach of trust.

The record discloses that the defendant did not testify in his own behalf at the trial in the court below, nor seek to explain this rather unusual conduct, and the testimony on this proposition was not seriously disputed.

It is contended by the defendant, however, that the testimony with reference to the drilling contract was incompetent and should have been excluded. On what theory this testimony should be held to be incompetent is not pointed out by the defendant in his brief. The record shows, we think, clearly that both the lease and drilling contract were parts of the same contemplated transaction, and while neither of these instruments were fully carried out and completed, they should be taken and construed together for the purpose of arriving at a just conclusion with respect to the rights and liabilities of the parties under the circumstances.

We think the evidence complained of reasonably tended to show that the $170 could not have been paid voluntarily, was not supported by a valid consideration, and that the trial court did not err in admitting this evidence.

Was the verdict of the jury contrary to law? Could the $170 have been paid voluntarily by the plaintiff under the circumstances disclosed by the record? We think the facts in the instant case bring it squarely within the rule laid down by this court in the case of Union Central Life Ins. Co. v. Erwin, 44 Okla. 768, 145 Pac. 1125, where the court said:

"Where a mortgagee has exercised an option given him by the mortgage to declare the mortgage debt due upon default in the payment of interest, and then demands the payment of a bonus in addition to the principal and interest of the debt before he will release the mortgage lien, and such bonus is paid, the mortgagor may maintain an action to recover the amount thereof."

In the instant case if the lessee, Hubbard, had simply remained passive after the execution and delivery to him of the lease in controversy, and after his repudiation of the drilling contract, and had omitted merely to return the unrecorded lease to the plaintiff, a situation might conceivably have arisen in which a payment by the lessor of a sum of money for the return of the lease could be regarded as a voluntary payment. But six months after he had abandoned the drilling contract and after he had destroyed the contract and returned practically all of the other leases to their owners, we find him placing the lease on record, thereby clouding plaintiff's title and making it impossible for him to place the plaintiff on an equal footing with the other owners of the block of land.

This was done at a time when the value of the mineral rights in the land had greatly advanced, and could not, therefore, have been done without knowing that it would seriously embarrass the plaintiff in the sale and disposition thereof. In these circumstances, where the parties are not on equal terms and where one of the parties by his own act has placed the other party at a disadvantage and forced him to submit to an illegal exaction or suffer heavy pecuniary loss, we do not think that a payment of money or other thing of value can be regarded as a voluntary act. As was said by the Supreme Court in the case of Union Central Life Ins. Co. v. Erwin, supra:

"A mortgagee will not be permitted to force payment of his mortgage under threat of foreclosure proceedings before the mortgage is due and at the same time demand a bonus on his investment before he will release his mortgage. Such conduct is unconscionable and will not be sanctioned by the courts. This principle was applied by this court in Wagg v. Herbert, 19 Okla. 525, 92 Pac. 250, in order to prevent a mortgagee from taking advantage of his duress and fraud in obtaining possession of an escrow deed."

In the case of New Orleans and Northeastern Railroad Company v. Louisiana Construction and Improvement Company, 109 La. Ann. 13, 33 South. 51, 94 Am. St. Rep. 403, it is said:

"The distinction to be made between payments voluntary and payments under duress has been a fruitful theme of discussion in the courts. Where the parties were not on equal terms, where the payor had no choice; where the only alternative was to submit to an illegal exaction or discontinue business—these and other like circumstances evidencing pressure or duress under which money or other value is parted with have never been regarded as embraced within the rule of voluntary acts within the meaning of the maxim 'Volenti non fit injuria'; Swift Company v. United States, III U. S. 28, 4 Sup. Ct. Rep. 244."

When the drilling contract and the lease are taken and construed together in the light of the surrounding circumstances there was no lease in existence upon which to base a demand for a payment by the plaintiff of the $170, and therefore there was no consideration whatever to support the payment of the $170.

Defendant next complains of instructions given by the court to the jury, and in refusing certain requested instructions. The instructions, however, were proper under the evidence introduced on behalf of the plaintiff to the effect that there was a drilling contract entered into as part and parcel of the same transaction by which the lease was delivered, and embodies a correct statement of the law applicable to a situation of this kind.

The instructions also submitted the defendant's theory of the case to the effect that if the payment had been voluntarily made by the plaintiff, the jury would be warranting in finding for the defendant, and the trial court committed no error, therefore, in refusing to give certain special instructions requested by the defendant, which were fully covered in the general instructions.

Our conclusion, based upon a careful examination of the entire record, is that the judgment of the trial court is correct and should be and is hereby affirmed.

By the Court: It is so ordered.