CIMARRON PIPELINE CONSTRUCTION, INC., An Oklahoma Corporation, for itself, and for and on behalf of All Other Class Members Similarly Situated, Plaintiff,

v.

UNITED STATES FIDELITY & GUARANTY INSURANCE COMPANY, A Maryland Corporation, for itself and for and on behalf of All Other Insurers Who Write Compensation Insurance in the State of Oklahoma, Defendant.

No. 75109.

Supreme Court of Oklahoma.

March 16, 1993.

Doyle Watson, Charles D. Watson, Jr., Watson & Watson, Drumright, and James M. Little, Leslie L. Conner, Jr., Conner & Little, Oklahoma City, for plaintiff.

C. William Threlkeld, Donald R. Wilson, Sherry L. Smith, Fenton, Fenton, Smith, Reneau and Moon, Oklahoma City, and Lewis A. Noonberg, David H. Bamberger, Leonard L. Gordon, Piper and Marbury, Baltimore, MD, for defendant.

ALMA WILSON, Justice.

Pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.1981, §§ 1601 et seq., the United States District Court for the Western District of Oklahoma certified the following question to this Court:

"Is economic compulsion or economic duress recognized as an independent tort under Oklahoma law?"

This question of law arises out of allegations by plaintiff (Cimarron) that it and similarly situated employers, as a prerequisite to the purchase of workers' compensation insurance, were coerced by defendant (USF & G) and all other insurers who write workers' compensation insurance in this state to execute "consent to rate" forms and that the workers' compensation insurance premium rates consented to and paid were excessive and illegal. Cimarron seeks to void the alleged agreement to pay excessive premium rates and to recover actual damages caused by the alleged coerced payment of excessive rates and exemplary damages. Cimarron urges that the theory of economic duress should be expressly recognized as a doctrine in tort law, and therefore exemplary damages may be recovered. USF & G, on the other hand, urges that application of the theory should be expressly limited to the relief of voiding contracts, and therefore the freedom in choice in making contracts will be preserved.

■ We answer that economic duress is recognized as an equitable doctrine in contract law and it is not an independent tort under Oklahoma law. We hold that 15 O.S.1991, § 52, authorizes a claim for relief from a consent obtained through economic duress and pursuant to 15 O.S.1991, § 233B, upon substantial proof of economic duress, the consent may be avoided.

The origin of this controversy dates back to the 1985 rate increase for workers' compensation insurance which this Court overturned in *Turpen v. Oklahoma State Board of Property and Casualty Rates*, 731 P.2d 394 (Okla.1986).[1] In remanding the proceeding to the Board, we said:

Since NCCI's filing is insufficient to support the 25.9% rate increase for workers' compensation insurance, the excess over the existing rate which has been collected by the affected insurers must be refunded. The Board shall prescribe the method for refunding premium overpayments. The order under review is vacated and the proceeding is remanded to the Board with directions to proceed in a manner not inconsistent with this opinion.

*Turpen*, 731 P.2d at page 405.

In 1987, Cimarron filed suit in the federal district court for relief from the excessive

---

1. In 1985, the National Council on Compensation Insurance (NCCI) filed an application with the Oklahoma State Board of Property and Casualty Rates (Board) for a 41.9 percent increase in workers' compensation insurance premium rates on behalf of insurers who write workers' compensation insurance in Oklahoma. The Attorney General of Oklahoma, on behalf of the State and its employers, objected to the requested rate increase. The Board approved a 25.9 percent increase in workers' compensation insurance rates. NCCI and the Attorney General sought appellate review of the Board's order. The appeals were consolidated and this Court held that the Board's order approving the 25.9 percent was invalid as it did not include statutorily required findings of fact and it was not supported by sufficient evidence. *Turpen*, 731 P.2d at pages 401 and 404–405.

premiums paid to USF & G for workers' compensation insurance.[2] USF & G moved to dismiss the amended complaint on several grounds, including the failure to state a claim and failure to exhaust administrative remedies. Concluding that *Centric Corp. v. Morrison–Knudsen Co.*, 731 P.2d 411 (Okla.1986), permits a claim for relief upon the theory of economic compulsion or duress to be maintained in state court, the federal district court denied USF & G's motion to dismiss for failure to state a claim. However, the federal action was stayed to allow Cimarron to pursue its administrative remedies before the Oklahoma State Board of Property and Casualty Rates.[3] The Board found it had no jurisdiction to grant relief from excessive workers' compensation insurance premium rates. The federal district court action was reopened. The single question of law was certified to this Court.

Long before *Centric Corporation v. Morrison–Knudsen Company*, 731 P.2d 411 (Okla.1986), the right to maintain an action to void a contract executed under duress and to recover money paid under duress was well established. The rationale of those early decisions, granting relief to one contracting party against another based on duress, rested on principles of equity. In *Union Cent. Life Ins. Co. v. Erwin*, 44 Okla. 768, 145 P. 1125 (1915), a mortgagor was permitted to maintain an action to recover damages in the amount of an unconscionable bonus paid under duress. The mortgagee had exercised an option to declare the mortgage debt due and also demanded payment of a bonus in addition to the principle and interest before he would release the mortgage. Finding the evidence established that the mortgagee had taken advantage of the necessities of the mortgagor and thus forced payment of the bonus by duress, the Court said:

> A mortgagee will not be permitted to force payment of his mortgage under threat of foreclosure proceedings before the mortgage is due and at the same time demand a bonus on his investment before he will release the mortgage. Such conduct is unconscionable and will not be sanctioned by the Courts. This principle was applied by this court in *Wagg v. Herbert*, 19 Okl. 525, 92 Pac. 250, in order to prevent a mortgagee from taking advantage of his duress and fraud in obtaining possession of an escrow deed.

*Union Cent. Life Ins. Co. v. Erwin*, 145 P. at 1127.

In *Hubbard v. Jones*, 103 Okla. 276, 229 P. 516 (1924), the plaintiff was allowed to maintain an action to recover money paid for a release of a mineral lease, however,

**2.** The complaint was amended in June, 1988, and March, 1989. The second amended complaint alleges economic duress and unlawful scheme and acts by writers of workers' compensation insurance in this state and seeks an order certifying the classes of the parties, an accounting of premiums paid since July, 1985, injunctive relief from future excessive rates and recovery of actual and exemplary damages.

**3.** In 1986, apparently, there were no further proceedings by the Oklahoma State Board of Property and Casualty Rates (Board) on remand of *Turpen*. The workers' compensation insurance industry did not reassert its request for increased premium rates. The Board did not prescribe a method for refunding the excess premiums as directed in *Turpen*. The excess over the existing rates which was collected was not refunded or otherwise credited to the employers. And, the employers continued to pay the excessive premiums for state-mandated workers' compensation insurance.

In the federal complaint, Cimarron alleges that in 1986 USF & G and other workers' compensation insurers embarked on a course of action to circumvent our *Turpen* decision; that USF & G and other workers' compensation insurers continued to charge the excessive rate by requiring Cimarron and other employers to agree to the unapproved workers' compensation insurance premium rate on "consent to rate" forms; that the "consent to rate" scheme was devised by the insurance industry to coerce payment of excessive, illegal premium rates for workers' compensation insurance from Cimarron and other Oklahoma employers and to insulate the insurance industry from any refund as directed in *Turpen;* that USF & G and all other insurers who write workers' compensation insurance in this state have violated Oklahoma law by charging rates for workers' compensation insurance in excess of the rates approved by the Board; and, that USF & G and all similarly situated insurers have economically coerced Cimarron and all similarly situated employers in this state into signing "consent to rate" forms as a condition precedent to purchasing workers' compensation insurance.

the court injected the tort doctrine of assumption of the risk in determining whether the payment of money was voluntary or forced by duress. The mineral lease provided for recording thereof after drilling. The *Hubbard* court found that the recording of the lease six months after intent to drill had been abandoned clouded title and made it impossible for the lessee to be on equal footing with the other mineral owners at a time when the value of the mineral rights had increased. The *Hubbard* court said:

> In these circumstances, where the parties are not on equal terms, and where one of the parties by his own act has placed the other party at a disadvantage, and forced him to submit to an illegal exaction or suffer heavy pecuniary loss, we do not think that a payment of money or other thing of value can be regarded as a voluntary act.

*Hubbard v. Jones*, 229 P. at 518. The *Hubbard* opinion continued, quoting the United States Supreme Court:

> "The distinction to be made between payments voluntary and payments under duress has been a fruitful theme of discussion in the courts. Where the parties were not on equal terms; where the payor had no choice; where the only alternative was to submit to the illegal exaction or discontinue business—these and other like circumstances evincing pressure or duress under which money is parted with have never been regarded as embraced within the rule of voluntary acts within the meaning of the maxim "Volenti non fit injuria." *Swift Company v. U.S.*, 111 U.S. [22] 28, 4 S.Ct. 244, 28 L.Ed. 341."

*Hubbard v. Jones*, 229 P. at 518.

Notwithstanding the application of equity and tort doctrines, the relief of voiding or rescinding a contract executed under duress or restoring money paid under duress is codified in our contract statutes.

Enacted shortly after statehood and remaining without substantive amendment, our contract statutes provide that a consent which is not free may be rescinded;[4] consent is not free when obtained through duress;[5] and, duress is the unlawful confinement of the person or family member of the person or unlawful detention of the property of the person.[6] These statutes were interpreted in *Samuels Shoe Co. v. Frensley*, 151 Okla. 196, 3 P.2d 216 (1931). Samuels Shoe Co. brought suit to collect on a note. Frensley alleged duress as an affirmative defense. The *Samuels Shoe Co.* decision expanded the strict meaning of unlawful confinement as an element of duress to include threats regarding the safety or liberty of a person, or his or her family or property, which are so oppressive as to deprive the person of the free exercise of his or her will and prevent a meeting of the minds necessary to a valid contract. The *Samuels Shoe Co.* court held that the threats of arrest and prosecution of the defendant's son operated to deprive the defendant of his free will power and to constrain the execution of the mortgage and therefore duress was a good defense to the action on the note.

In *Sinclair Refining Co. v. Roberts*, 201 Okla. 358, 206 P.2d 193 (Okla.1949), the elements of duress as expressed in *Samuels Shoe Co.* were recognized with approval and a substantial evidence standard of proof of duress was adopted. The plaintiff, Roberts, sought to recover $1,000.00 of commissions withheld by defendant. Pursuant to written agreement, Roberts was a commissioned agent for the defendant to operate defendant's warehouse. The agreement provided that Roberts would be responsible for all shortages at the warehouse. When defendant withheld commissions to cover audited shortages, Roberts filed suit alleging that the defendant arbitrarily and by means of menace,

---

4. 15 O.S.1991, § 52.

5. 15 O.S.1991, § 53.

6. 15 O.S.1991, § 55, which provides:
   Duress consists in:
   1. Unlawful confinement of the person of the party, or of husband or wife of such party,

or of an ancestor, descendant, or adopted child of such party, husband or wife.
   2. Unlawful detention of the property of any such person; or,
   3. Confinement of such person, lawful in form, but fraudulently obtained, or fraudulently made unjustly, harassing or oppressive.

fraud and duress forced his consent to authorize deduction of shortages from his commissions. The *Sinclair Refining* court reviewed the evidence submitted to the jury, the contract statute defining duress and the current decisional law. Finding that Roberts had reasonable alternatives available, the court concluded that the evidence of duress, as a matter of law, was insufficient to create a jury question and reversed the jury verdict.

*Newsome v. Medis,* 205 Okla. 574, 239 P.2d 784 (Okla.1951), left standing a judgment for actual and exemplary damages based on duress. Thelma Medis filed suit to collect the balance due on the sale of realty and exemplary damages on the theory of duress. The jury returned a verdict in favor of Medis for $1,700.00 actual damages and $2,500.00 punitive damages. The award of actual damages was challenged on appeal, but the award of exemplary damages was not. Refraining from redetermination of the fact question of duress, the Court affirmed the award of actual damages, but noted that whether the action arises out of a breach of an obligation not arising out of contract or a breach of an obligation arising out of contract is not presented on appeal.

In *Centric Corporation v. Morrison–Knudsen Company,*[7] this Court expressly recognized economic duress or business compulsion as a species of duress defined in 15 O.S.1981, § 55 and *Samuels Shoe Co. v. Frenzy* and adopted the substantial evidence standard of proof of duress established in *Sinclair Refining Co. v. Roberts. Centric* cites *Newsome v. Medis* as acknowledgment of the *Samuels Shoe Co.* modern meaning of duress. And, similar to our early opinions on duress, *Centric* espouses underlying principles of equity and tort law,[8] but expressly refrained from recognizing the doctrine of economic duress as an independent tort.[9] The holding in *Centric* is clear—economic duress is available as a ground for rescission in this jurisdiction.

■ Although, our decisional and statutory law has inextricably interwoven tort notions within the doctrine of economic duress, we are not compelled to recognize the doctrine of economic duress as a general

---

**7.** 731 P.2d 411 (Okla.1986). *Centric* arose out of the construction of the General Motors plant in Oklahoma City. Centric was the subcontractor for the concrete work. Due to a variety of alleged difficulties in design, schedules and project coordination, Centric incurred large cost overruns. Centric was paid the $12.5 million dollar contract price, exclusive of its cost overruns. Without payment of the cost overruns, Centric was allegedly on the verge of bankruptcy. In negotiations to settle the cost overruns, Centric reduced its opening demand of $2.2 million dollars to $1.8 million dollars. Morrison–Knudsen countered with a "take it or leave it" offer of $1.4 million dollars. Centric took the offer and entered into a settlement agreement. Subsequently, Centric repudiated the settlement agreement and filed a complaint in the federal district court alleging economic duress and asking that the settlement agreement be set aside. The federal district court dismissed Centric's complaint and, on appeal, the Court of Appeals for the Tenth Circuit certified several questions of law to this Court. We answered two questions, holding that the theory of economic duress may be a basis for avoiding a mutual release and settlement of contract claims and that wrongful or unlawful acts which result in involuntary settlements are not confined to settlement negotiations.

**8.** See, *Centric,* 731 P.2d at 414, which reads as follows: "However, the minimum [business ethics] standards are not limited to precepts of rationality and self-interest—they include equitable notions of fairness and propriety which preclude the wrongful exploitation of business exigencies to obtain disproportionate exchanges of value" and "there is an increasing recognition of the court's role in correcting inequitable or unequal exchanges between disproportionate bargaining power". At page 415, we recognized that economic duress requires an unlawful act in the nature of a tort or a crime. At page 417, we articulated the elements of economic duress which conform to intentional tort law: 1) the contract was the result of a wrongful or unlawful act, initiated and committed with knowledge of its impact and for the purpose of coercion; 2) the coerced party had no reasonable alternative to the contract; and, 3) the coercion caused detriment to the coerced party. And, at page 419, in defining "voluntary," the *Centric* rationale relies upon *Hubbard v. Jones* and the quoted United States Supreme Court opinion wherein the maxim *volenti non fit injuria* (assumption of the risk) for purposes of "voluntary" payment of tax assessments is discussed; and, in defining "wrongful" or "unlawful", we said "the key is that the threatened action presents an unreasonable alternative to the weaker party."

**9.** *Centric,* 731 P.2d at p. 420.

**1166**

tort theory.[10] The primary purpose served by avoidance or rescission of a contract based on economic duress is the prevention of profit reaped by wrongful or unlawful acts which deny another the freedom of choice in contracting. The rescission remedy, equitable in nature, adequately serves that purpose.[11]

HODGES, C.J., LAVENDER, V.C.J., and KAUGER, SUMMERS and WATT, JJ., concur.

SIMMS, J., concurs specially.

HARGRAVE and OPALA, JJ., concur in result.

SIMMS, Justice, concurring specially:

I concur with the majority insofar as it holds that economic duress is not recognized as an actionable tort in Oklahoma.

**10.** Both parties cite numerous economic duress authorities from sister jurisdictions. Many of those cases were reviewed in *Centric*. Because complete relief may be sought in an action for rescission or cancellation of an agreement, we need not re-review the development of the theory of economic duress in this opinion. Almost every jurisdiction recognizes that a contract may be voided because of economic duress, while a majority of the jurisdictions refuse to adopt economic duress as a general theory of tort law. Common throughout these decisions is the notion that the particular facts and circumstances of each case will dictate the relief to be granted, rather than the nature of the legal theory.

**11.** See, 15 O.S.1991, §§ 233A and 233B; *Commercial Communications, Inc. v. State ex rel. Oklahoma Board of Public Affairs*, 613 P.2d 473 (Okla.1980); *Baker v. Massey*, 569 P.2d 987 (Okla.1977); *Z.D. Howard Company v. Cartwright*, 537 P.2d 345 (Okla.1975).