**PUBLISH**

_____

**UNITED STATES COURT OF APPEALS**

**Filed 6/18/96**

**TENTH CIRCUIT**


In re:  MERIDIAN RESERVE, INC.,   )
                                  )
    Debtor.                   )
_____ )
                                  )
OCTAGON RESOURCES, INC., successor )
in interest by merger to Octagon Gas )
Systems, Inc.,                    )
                                  )
    Appellant,                )
                                  )    No. 95-6239
v.                                )
                                  )
BONNETT RESOURCES                 )
 CORPORATION,                     )
                                  )
    Appellee,                 )
_____ )
                                  )
ROY T. RIMMER,                    )
                                  )
    Intervenor-Appellee.      )

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CIV-95-506-W)

_____


D. Kent Meyers (Harvey D. Ellis, Jr., with him on the briefs), Crowe & Dunlevy, Oklahoma City, Oklahoma, for Appellant.

Kenneth L. Jones, Jr., Jones & Blaney, Oklahoma City, Oklahoma, for Appellee.

Robert S. Ballentine (H. Rey Stroube III, Charles A. Moore, and Betty C. Bradley, Akin, Gump, Strauss, Hauer & Feld with him on the briefs), Houston, Texas, for Intervenor-Appellee.

_____

Before **PORFILIO, BRORBY**, and **EBEL**, Circuit Judges.

_____

**PORFILIO**, Circuit Judge.

_____

This appeal represents the second time an aspect of this bankruptcy case has been before us. The present controversy concerns an attempt by Octagon Resources Inc., as the prevailing party, as defined by Okla. Stat. Ann. tit. 12, § 936 (West 1996), to gain its attorney fees from Roy T. Rimmer and Bonnet Resources Corporation. The bankruptcy court denied Octagon's motion, and the district court affirmed. Octagon now appeals. We affirm.

An understanding of the basic facts of the substantive controversy between the parties is necessary to resolving this appeal. Poll Gas, Inc. (not a party here) owned and operated a natural gas gathering system. After a series of complicated transactions, Mr. Rimmer received, "a full Five Percent (5%) perpetual overriding royalty interest on all proceeds payable to [Poll] under the [system] ...." *Octagon Gas Sys., Inc. v. Rimmer*, 995 F.2d 948, 952 (10th Cir.), *cert. denied*, 114 S.Ct. 554 (1993) (alterations in original) (*Rimmer I*). Poll Gas, Inc. filed for Chapter 11 bankruptcy protection in 1988, and in January 1990, the bankruptcy court approved the trustee's reorganization plan. Pursuant to the plan, Poll's natural gas gathering system was conveyed to Norwest Bank Minnesota to satisfy the Bank's secured claim. Norwest received the Poll system "free and clear of liens, claims, interests, and encumbrances," *id.,* and conveyed the system to Octagon who refused to recognize Mr. Rimmer's interest in the system or pay him any royalties. As a result, Bonnett Resources, a secured creditor of Mr. Rimmer asserting a claim in Mr.

Rimmer's interest in the Poll system, filed a declaratory judgment action in the bankruptcy court to determine Mr. Rimmer's interest. Mr. Rimmer intervened. The bankruptcy court held Mr. Rimmer maintained his five percent interest in the proceeds of natural gas sold through the Poll system unaffected by the reorganization plan or the transfer to Octagon Resources. *Id.*

On appeal, we reversed that judgment. First, applying Oklahoma law, we concluded Mr. Rimmer had an enforceable interest in the Poll system natural gas sale proceeds by virtue of the various agreements. *Id.* at 952-54. Second, we determined Mr. Rimmer's interest was an "account" within the meaning of Article 9 of the Uniform Commercial Code as adopted by Oklahoma. *Id.* at 954-55; *see generally* Okla. Stat. Ann. tit. 12A, § 9-101 (West 1996) (codifying Article 9 of the U.C.C.). Pursuant to Article 9, "the buyer of an account is treated as a secured party, his interest in the account is treated as a security interest, the seller of the account is a debtor, and the account sold is treated as collateral." *Rimmer I*, 995 F.2d at 955. Third, we decided Poll's Chapter 11 reorganization plan did not alter the application of Article 9 to Mr. Rimmer's account. *Id.* at 955-57. Finally, we remanded the case to the bankruptcy court with directions to "readdress, in light of Article 9, the central issue of whether the reorganization plan effectuated a transfer of Rimmer's interest to Octagon, or whether Rimmer's interest survives the Plan." *Id.* at 957.

On remand, the bankruptcy court concluded Mr. Rimmer did not perfect his security interest in the account. *In Re: Meridian Reserve, Inc.*, No. 90-0131-BH, slip op. at 8 (Bankr. W.D. Okla. Oct. 7, 1994). The court further held the exception contained in Okla. Stat. Ann. tit. 12A, § 9-302(1) (West 1996) did not apply to the requirement of filing a financing statement. *Id.* at 18. Therefore, the underlying substantive controversy was resolved in favor of Octagon.

After the bankruptcy court's judgment was entered, Octagon filed a motion for an award of attorney fees, as provided in Okla. Stat. Ann. tit. 12, § 936, in an amount exceeding $460,000. That statute provides:

> In any civil action to recover on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, unless otherwise provided by law or the contract which is the subject [of][1] the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

In ruling upon the motion, the bankruptcy court determined Oklahoma law applied to the issue of whether attorney fees were appropriate because state law provided the rule of decision in the underlying bankruptcy proceeding. That conclusion is not contested here. The bankruptcy court further concluded the instant proceeding fell outside the scope of the Oklahoma statute, reasoning the court was required to look to the "substance of the complaint" filed by Bonnett. That substance, the court found, was "whether

---

[1]The statute here reads "to," but a footnote in the annotated code indicates "to" should instead read "of." We have altered the statute to conform with this correction.

Rimmer's interest passed to the buyer [Octagon]." ***In Re: Meridian Reserve, Inc.***, No. 90-0131-BH, slip op. at 4-5 (Bankr. W.D. Okla. Feb. 28, 1995). Further, the court characterized Bonnett's request for back payments from Octagon as "[c]ollaterally related to the [substantive] issue." *Id.* Finally, the court believed Oklahoma law dictated this interpretation, stating:

> Viewed under the strict interpretation mandated by the Oklahoma Supreme Court, the instant proceeding simply does not fall within the class of cases contemplated by the statute. *See, e.g.*, ***Kay v. Venezuelan Sun Oil Co.***, 806 P.2d 648 (Okla. 1991). In Oklahoma, the term "[o]pen account is defined as an unsettled debt arising from items of work and labor, goods sold and delivered, and other open transactions not reduced to writing and subject to future settlement and adjustment. ***Nicholson v. Thixton***, 448 P.2d 454, 455 (Okla. 1968). ***Oklahoma Oil & Gas Exploration Drilling Program,*** 877 P.2d 605, 611 n.8 (Okl. App. 1994). Here, the contract is in writing, the debt is settled at 5% of the specified sales and is not subject to future settlement and adjustment.

*Id.* The court found further support for this view in ***Paramount Pictures Corp. v. Thompson Theatres, Inc.***, 621 F.2d 1088, 1092 (10th Cir. 1980) ("An express contract, which defines the duties and liabilities of the parties, whether it be oral or written, is not, as a rule, an open account."), and in ***Bickford v. John E. Mitchell Co.,*** 595 F.2d 540, 545 (10th Cir. 1979) (The plaintiff's "claims of alleged deficiencies in the payment of royalties and alleged failure to reconvey patent and trademark rights" fall outside the purview of § 936.). Therefore, the court concluded, "[t]his contract, thus, does not constitute an account with the meaning of these interpretations, nor is it a suit on a contract within the contemplation of the statute. It also does not fall within any of the

other causes of action stated in the statute." *Id.* at 5.  The district court affirmed the

bankruptcy court's ruling, reasoning in relevant part:

> Giving this statute a strict interpretation as it is required to do, the Court finds the subject of this lawsuit was not a contract relating to the purchase or sale of goods.  Rather, as stated, the issues concerned the nature of Rimmer's interest and whether such interest was property of Poll's bankruptcy estate.

*In Re: Meridian Reserve, Inc.*, No. Civ-95-506-W, slip op. at 2 (W.D. Okla. June 20,

1995).

On appeal, Octagon raises the single issue of whether Okla. Stat. Ann. tit. 12, §

936 applies under the circumstances of this case.  Octagon argues Bonnett Resources and

Mr. Rimmer's action is on a contract to recover a percentage of the proceeds from

Octagon's sale of goods to third parties and, therefore, is an action on a "contract relating

to the purchase or sale of goods" within the meaning of the statute.  Octagon contends

both the bankruptcy court and the district court erred in concluding otherwise.

We review the denial of an attorney fees award for an abuse of discretion.  *Mann

v. Reynolds*, 46 F.3d 1055, 1062 (10th Cir. 1995); *Sheets v. Salt Lake County*, 45 F.3d

1383, 1391 (10th Cir.), *cert. denied*, 116 S.Ct. 74 (1995).  However, any statutory

interpretation or other legal analysis underlying the district court's decision concerning

attorney fees is reviewed de novo, *Daleske v. Fairfield Communities, Inc.*, 17 F.3d 321,

323 (10th Cir.), *cert. denied*, 114 S.Ct. 1832 (1994), and any supporting findings of fact

are reviewed for clear error.  *Mann*, 46 F.3d at 1062; *Homeward Bound, Inc. v. Hissom*

*Memorial Ctr.*, 963 F.2d 1352, 1355 (10th Cir. 1992). *See also **Akrla Energy Resources***

***v. Roye Realty & Developing, Inc.***, 9 F.3d 855, 865 (10th Cir. 1993) ("We review the

meaning of 'prevailing party' under Oklahoma law de novo.").

Octagon raises a threshold question of whether  the earlier decision of this court

represents the law of the case on certain dispositive issues.  "The law of the case is a

judicial doctrine designed to promote decisional finality.  Once a court decides an issue,

the doctrine comes into play to prevent the re-litigation of that issue in subsequent

proceedings in the same case." ***Pittsburgh & Midway Coal Mining Co. v. Watchman***, 52

F.3d 1531, 1536 n.4 (10th Cir. 1995).  "The doctrine applies to issues previously decided,

either explicitly or by necessary implication." ***Guidry v. Sheet Metal Workers Int'l***

***Ass'n***, 10 F.3d 700, 705 (10th Cir. 1993), *reh'g on other grounds*, 39 F.3d 1078 (10th Cir.

1994) (en banc), *cert. denied*, 115 S.Ct. 1691 (1995) (citation omitted).  In ***Guidry,*** the

court identified three potential reasons for concluding an issue had been implicitly

decided previously.  "(1) resolution of the issue was a necessary step in resolving the

earlier appeal; (2) resolution of the issue would abrogate the prior decision and so must

have been considered in the prior appeal; and (3) the issue is so closely related to the

earlier appeal its resolution involves no additional consideration and so might have been

resolved but unstated." *Id.* at 707 (footnote omitted).  These factors were not intended to

be exhaustive. *Id.* at 707 n.5.  In addition, this court has also recently joined "the majority

of our sister circuits in holding that dicta is not subject to the law of the case doctrine."

*United States v. Rice*, 1996 WL 44452, at *4 (10th Cir. Feb. 5, 1996) (unpublished

disposition), *petition for cert. filed*, ___ U.S.L.W. ___ (U.S. May 6, 1996) (No. 95-

8943).

Applying these rules to the instant case, we conclude the law of the case doctrine is

inapplicable here.  Our previous description of Mr. Rimmer's "interest in the Poll System

gas sales proceeds" was made in two different contexts.  First, in reciting  the facts, we

described Mr. Rimmer's interest as five percent of the proceeds from the sale of natural

gas through Poll's system.  *Rimmer I*, 995 F.2d at 951-52.  Second, the court similarly

characterized Mr. Rimmer's interest when responding to Octagon's argument Mr.

Rimmer had no enforceable contractual interest.  *Id.* at 952-53.  Our prior characterization

was not made while applying  the Oklahoma attorney fee statute; therefore, the difference

in context is crucial because the considerations involved in determining the applicability

of the attorney fees statute differ from either circumstance described in the prior decision.

The terminology has a specific meaning in the Oklahoma attorney fee statute, but our

discussion labeling Mr. Rimmer's interest was general in nature.  At most, our description

of Mr. Rimmer's interest can properly be characterized either as not resolving the

particular issue raised in this second appeal, or as dictum.  Under either circumstance, the

law of the case doctrine does not drive our resolution of this appeal.

Octagon challenges the bankruptcy and district courts' determination the language

of Okla. Stat. Ann. tit. 12, § 936 must be strictly construed.  Octagon  advances an

argument based on a purported distinction between the Oklahoma courts' interpretation of the "labor or services" clause of the statute in comparison to the "goods, wares, or merchandise" clause. According to Octagon, the Oklahoma courts strictly construe the "labor or services" clause by requiring the contract to be for labor or services, but broadly interpret the "goods, wares, or merchandise" clause by giving full effect to the statutory language "related to." Octagon is correct that Oklahoma case law may have previously drawn a distinction in interpreting these two clauses of § 936. However, the distinction is not as significant or dispositive as Octagon argues.

Oklahoma, like most states, follows the American Rule that each party is responsible for its own litigation costs and expenses including attorney fees. *See generally* ***Alyeska Pipeline Service Co. v. Wilderness Society***, 421 U.S. 240, 247 (1975) (holding American Rule governed absent specific statutory authorization for awarding attorney fees to prevailing party); ***Kay v. Venezuelan Sun Oil Co***., 806 P.2d 648, 650 (Okla. 1991) ("The American Rule is firmly established in this jurisdiction."). Oklahoma courts are without the authority to award attorney fees absent a specific statute or contractual term. In this case, Octagon maintains the necessary authority is provided by § 936.

There is no overarching organizing principle to determine when an attorney fees award is appropriate under the statute, however. Awarding attorney fees depends on the totality of the circumstances involved in each particular case. With that caveat in mind,

-10-

we believe the distinction between the two clauses Octagon draws is not supported by Oklahoma precedent.

In 1970, the Oklahoma legislature amended this statute to include the "labor or services" clause. Five years later, in ***Russell v. Flanagan***, 544 P.2d 510 (Okla. 1975), the Oklahoma Supreme Court considered the scope of the new clause, offering a strict interpretation of the statute. In that case, the plaintiff had brought a small claims action for a breach of warranty on a labor contract for servicing a sewer line. ***Id.*** at 511. The court held the action only collaterally concerned labor and services making an attorney fees award inappropriate, reasoning:

> We are of the opinion that the phrase "or for labor labor [sic] or services" properly comes within the initial category of "a civil action" not, as appellant contends, the antecedent classification of a "contract relating to ...."

> We believe that the addition of the phrase "or for labor or services" by amendment to the statute in 1970 was intended by the legislature to be limited to those situations where suit is brought for labor or services rendered. We believe that an improper and unintended meaning would result if, as appellant contends, this clause were construed to allow attorney fees in the all encompassing field of "contracts related to ..., labor or services."

> It is our opinion that the clauses of the statute are arranged in an illusory sequence and that to arrive at the obvious intent of the legislature we must transpose the sections of the statute to read: ' * * * instrument, or for labor or services, or contract relating to, * * *'

> Where the legislative intent would be defeated by construction of a statute as written the Court may transpose words and phrases as necessary to arrive at the true meaning.

*Id.* at 512.  The Oklahoma legislature apparently has acquiesced in this reasoning, and the Oklahoma courts continue to apply it.  *See, e.g.*, **Burrows Constr. Co. v. Independent Sch. Dist. No. 2,** 704 P.2d 1136, 1138 (Okla. 1985); **Ferrell Constr. Co., Inc. v. Russell Creek Coal Co.**, 645 P.2d 1005, 1011 (Okla. 1982).

In contrast, Octagon argues in cases interpreting the "goods, wares, or merchandise" clause, the Oklahoma courts have adopted a broad interpretation.  In addition to an Oklahoma Bar Journal article, James R. Lieber and Stephanie L. Jones, An Analysis of 12 O.S., § 936 (1981): An Attorney Fee to the Prevailing Party, 59 O.B.J. 3661 (1988), Octagon Resources relies on three cases for its assertion.  First, Octagon argues the court adopted a broad definition of "relating to" in **Hardesty v. Andro Corporation-Webster Division**, 555 P.2d 1030, 1036 (Okla. 1976).  Octagon is correct. In **Hardesty**, the court adopted the following expansive definition of the term of art from another jurisdiction:

> "...it is commonly understood that 'relating to' embraces much more than such words as 'directly connected to' or 'a part of.'  We constantly use the words 'relating to' in many circumstances where time and again we find an event or a status often leading to or in our experience being followed by a common consequence."

*Id.* at 1036 (quoting **State v. Gaddy**, 184 N.E.2d 689, 693 (Ohio Com.Pl. 1962)).  Second, Octagon cites **Arine v. McAmis**, 603 P.2d 1130 (Okla. 1979), where the court rejected an "unduly narrow reading of the statute," in allowing a plaintiff who sought to rescind a contract to receive attorney fees under § 936.  The court noted the legislature used the

general term "recover on" a contract and rescission fit within this definition. ***Id.*** at 1132.

Third, Octagon offers a quotation from a case dealing with another attorney fees

provision. "This Court is bound to liberally construe statutes in derogation of the

common law so as to effect legislative object and promote justice." ***Schaeffer v.***

***Shaeffer***, 743 P.2d 1038, 1040 (Okla. 1987) (considering Okla. Stat. Ann. tit. 12, § 940

(West 1996) which allows an attorney fee award to the prevailing party in cases involving

the "negligent or willful infliction of harm to property."). Nonetheless, we do not think

these three precedents and the Oklahoma Bar Journal support Octagon's proposition.

In particular, more recent Oklahoma cases have adopted a strict interpretation of

the statute in ***all*** cases, not just those dealing with the "labor or services" clause. For

example, consider the relatively recent decision in ***Kay.*** There, the Oklahoma Supreme

Court began with an analysis of the "labor or services" precedents.

> Exceptions to the American Rule are narrowly defined. Similarly, the mandatory provisions of § 936 that the prevailing party in an action to recover for labor and services shall be allowed a reasonable attorney fee are strictly applied.
>
> In ***Russell v. Flanagan***, the "for labor and services" provisions of § 936 were strictly limited to actions brought to recover for labor and services rendered. We specifically rejected an interpretation of § 936 which would authorize the courts to award attorney fees to the prevailing party in an action alleging injury that was merely related to a contract for labor and services.

***Id.*** at 650 (footnotes omitted). However, the court's continuing discussion casts serious

doubt on Octagon's argument.

-13-

The revisit of our previous opinions confirms the rule of strict application of the "labor and services" provisions of § 936. And, a plain reading of § 936 in view of the amendatory history commands strict application of the statute. As originally enacted, § 936 authorized the award of attorney fees for collection on an open account, and was subsequently amended to include seven additional specific categories evidencing contractual indebtedness sought to be recovered. Our strict application rule preserves the obvious legislative intent to authorize awards of attorney fees to the prevailing parties in actions for money judgments for debts created by the contracts enumerated in the statute.

*Id.* at 651-52 (footnotes omitted). Finally, in a footnote, the court further elaborated:

Legislative intent to mandate prevailing party attorney fees in actions brought to enforce executory promises to pay monetary consideration for receipt of property or labor or services is readily discernable from the amendatory history of § 936..... These amendments indicate legislative intent to mandate, "shall be allowed", attorney fees in actions to collect money promised, whether evidenced by a promissory note, a negotiable instrument, an account whether from sale of tangible property or labor and services and a bill or a contract for goods sold and delivered.

*Id.* at 652 n.11. Since ***Kay***, the Oklahoma courts have continued to apply this stricter interpretation of the statute. *See **TRW/REDA Pump v. Dean***, 829 P.2d 15, 22 (Okla. 1992) ("Here we do have a specific statute allowing an award of fees for appellate work in certain circumstances, but we recognize statutes allowing a prevailing party to recover attorney fees are strictly applied by this Court."); ***Beard v. Richards***, 820 P.2d 812, 815-16 (Okla. 1991) ("The Oklahoma Constitution, art. 2, § 6, guarantees that our courts will be open to every person and justice shall be administered without sale, denial, delay or prejudice. Liberal application of statutes authorizing prevailing party attorney fees has a chilling effect on our open access to the courts guarantee. Accordingly, statutes

-14-

authorizing prevailing party attorney fees are strictly applied by this Court.") (citations omitted); ***Robert L. Wheeler, Inc. v. Scott***, 818 P.2d 475, 481 n.9 (Okla. 1991) ("We held in ***Kay v. Venezuelan Sun Oil Co.,*** 806 P.2d 648 (Okla. 1991), that § 936 must be strictly applied and that an award of prevailing party attorney's fees shall be allowed in actions to collect money promised, whether evidenced by a promissory note, a negotiable instrument, an account whether for sale of tangible property or labor and services and a bill or a contract for goods sold and delivered."). Whatever the Oklahoma Supreme Court did in past cases, we think ***Kay*** and its progeny make clear a strict interpretation of § 936 is warranted. The Oklahoma Supreme Court has effectively read "related to" as "for" as it originally did in ***Russell*** in interpreting the "labor or services" clause. We therefore conclude both the bankruptcy court and the district court were correct in applying a strict interpretation of the statute.

Under a strict interpretation of the statute, both the bankruptcy court and the district court were correct in denying Octagon attorney fees. The nature of the action filed by Bonnett Resources and Mr. Rimmer against Octagon was at most tangentially or collaterally related to the purchase or sale of goods, wares, or merchandise. While Octagon is correct that there is a relationship between the natural gas sold through the system and the underlying litigation, we do not believe the relationship is close enough to warrant an award of attorney fees. One need only examine the relief prayed for in the various complaints to determine the real dispute was about the status of Mr. Rimmer's

-15-

five percent interest in the natural gas processed through the system after the bankruptcy reorganization plan. Although plaintiffs sought to recover unpaid proceeds that were attributable to Mr. Rimmer and his successors, that claim was raised only as an attribute of the ownership rights the plaintiffs sought to settle. The action was simply not about any debt Mr. Rimmer owed Octagon, which under *Kay*, appears to be the only way attorney fees are recoverable under § 936.

**AFFIRMED.**