**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 9 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

NORAM GAS TRANSMISSION
COMPANY, a Delaware corporation,

      Plaintiff-Appellee,

v.

ENTERPRISE RESOURCE
CORPORATION, an Arkansas
corporation,

      Defendant,

      and

ALAN G. MIKELL,

      Defendant-Appellant.

No. 97-5170
(D.C. No. 94-CV-773-H)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BALDOCK**, **EBEL**, and **MURPHY**, Circuit Judges.

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Defendant-appellant Alan G. Mikell appeals the district court's judgment in favor of plaintiff-appellee Noram Gas Transmission Company. Because the district court's findings are supported by the evidence, we affirm.

## I. Background

Plaintiff Noram Gas Transmission Company is the successor in interest of Arkla Energy Resources. In April 1989, Arkla entered into a settlement agreement with defendants Mikell and Enterprise Resource Corporation to resolve a dispute arising out of gas purchase contracts involving thirty-eight wells in which Mikell and Enterprise owned interests.[1] The agreement provided for a prepayment by Arkla of two million dollars, to be recouped from future gas production by defendants over a five and a half year period.

The agreement provided that Arkla could recoup its prepayment through cash refunds from defendants under certain circumstances. Section 2(c) of the agreement provided that if in any calendar quarter Arkla, or its designee,

---

[1] Although a defendant in the lawsuit, Enterprise Resource Corporation is not a party to this appeal.

requested delivery of a daily average volume of gas equal to those volumes specified in section 2(b)(ii) of the agreement, and defendants failed to deliver such volumes, Arkla would be entitled to a refund. These volumes were known as the "minimum volumes." The agreement provided that requests for minimum volumes could be satisfied out of the thirty-eight wells identified in the agreement or from any other source.

In addition to the requests for minimum volumes, the agreement required Arkla to make a monthly nomination of the percentage it desired of defendants' "daily deliverability," which is an estimate of a well's daily capability of natural gas production. Arkla could nominate gas only from the thirty-eight wells identified by the agreement in which defendants had interests. When the agreement was signed, the total daily deliverability attributable to defendants from the wells was greater than the minimum volumes set out in the agreement. Thereafter, defendants' daily deliverability declined to an amount less than the minimum volumes. It is undisputed that Arkla/Noram always nominated one-hundred percent of defendants' daily deliverability.

The agreement also provided that upon termination of the subject contracts or a judicial determination that defendants breached the contracts or the settlement agreement, defendants were required to refund immediately the unrecouped portion of the prepayment.

In August 1994, Noram Gas Transmission, as successor in interest to Arkla, brought this action against Mikell and Enterprise. Noram alleged that throughout the recoupment period there was a standing request for the minimum volumes of gas set forth in the agreement, and that defendants failed to deliver the requested amounts or make any refunds. Defendants responded that Arkla, and later Noram, never requested the minimum volumes so as to initiate the refund provision, relying on plaintiff's monthly nominations for daily deliverability. Defendants counterclaimed against Noram for damages resulting from Arkla/Noram's alleged breach of the recoupment provisions in the settlement agreement.

After a bench trial, the district court found that Arkla/Noram had a standing request for the minimum volumes set out in the agreement, that there was a difference between a "request" for the minimum volumes from defendants and a "nomination" of daily deliverability from the thirty-eight wells identified by the agreement, and that defendants failed to deliver the requested amounts, thus triggering the refund provision. The court found the damages provision of the agreement, requiring reimbursement of the unrecouped balance of the prepayment, reasonable. Pursuant to 12 Okla. Stat. § 936, the court awarded Noram attorneys fees jointly against Mikell and Enterprise.

On appeal, Mikell argues that the district court's factual findings are contrary to the evidence; that the court erred in enforcing the liquidated damages

provision of the agreement; that the court erred in finding the settlement agreement to be a contract for the sale of goods entitling Noram to attorneys fees; and that the court abused its discretion in awarding attorneys fees jointly against Mikell and Enterprise.

## II. Breach of Contract

Mikell's primary argument on appeal is that the district court's factual finding that Noram had a standing request for the minimum volumes of gas during the recoupment period is contrary to the evidence. We must accept the district court's findings of fact unless they are clearly erroneous. See Exxon Corp. v. Gann, 21 F.3d 1002, 1005 (10th Cir. 1994). A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made. See Cowles v. Dow Keith Oil & Gas, Inc., 752 F.2d 508, 511 (10th Cir. 1985). We review the evidence in the light most favorable to the district court's ruling and must uphold any finding that is permissible in light of the evidence. See Exxon Corp., 21 F.3d at 1005; see also Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985) ("If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have

weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

Here, the district court's factual finding regarding the standing request for minimum volumes is well supported by the evidence. Several witnesses testified that Arkla/Noram had a standing request for the minimum volumes from both Mikell and Enterprise. See Testimony of James Nelson Cantwell, Appellant's App. I at 221 (testifying standing request for minimum volumes had been communicated to Mikell both by telephone and in face-to-face conversations); at 229 (testifying Arkla/Noram had standing explicit and implicit understanding that minimum volumes were requested each month to accelerate refund); at 232-33 (explaining that even if daily deliverability fell to zero, based on standing request for minimum volumes Arkla/Noram would be entitled to refund); at 236 (testifying parties had clear understanding that Arkla/Noram was requesting tender of at least the minimum volumes); Testimony of Jeffrey Mark Holloway, id. at 277 (testifying that administrator for Mikell and Enterprise agreed that under agreement Arkla/Noram expected nothing less than the minimum volumes); at 281 (testifying that Arkla communicated to Mikell at meeting that it expected nothing less than minimum volumes); at 304-05 (testifying when agreement signed, Mikell and Enterprise put on notice that Arkla/Noram wanted minimum volumes regardless of deliverability); and Testimony of Michael Thomas Webb,

id. at 398, 403-04, 405 (testifying that when administering settlement agreement for Enterprise, he was informed on numerous occasions of Arkla/Noram's standing request for minimum volumes); Appellant's App. II at 417 (same).

Evidence that Arkla/Noram only nominated Mikell's daily deliverability does not require a contrary result, as there was testimony indicating that the nominations for daily deliverability were separate and distinct from the request for minimum volumes, see Appellant's App. I at 225, 228-29, 240, 245-46, 249, Appellant's App. II at 416-17, 420, 484, and that Arkla/Noram could only nominate the amount of gas that was deliverable from wells dedicated to the contract, see Appellant's App. at 267-68, 280, 303-08, Appellant's App. II at 446-47, 449-50, 451.

Because the evidence is sufficient to support the district court's finding that minimum volumes were requested but not delivered throughout the recoupment period, the court's conclusion that Mikell materially breached the agreement by failing to pay the required refunds is well supported. Therefore, Mikell's argument regarding his counterclaim is without merit. Further, the district court's findings in paragraph 23, regarding letters sent to Mikell demanding payment and

assurances of future performance and Mikell's failure to comply with these demands, are based on undisputed evidence.[2]

### III. Liquidated Damages

Mikell argues the liquidated damages provision requiring it to reimburse Noram for the unrecouped payments upon judicial determination of a breach is void because (1) there was no material breach of the agreement, and (2) damages can be easily ascertained. As already discussed, the evidence supports a finding that Mikell materially breached the settlement agreement. Further, even assuming that damages could be easily ascertained, the liquidated damages provision is enforceable.

Mikell cites several Oklahoma cases voiding a liquidated damages provision when ascertainment of actual damages was neither impracticable nor difficult. These cases are inapplicable, however, as they concern the general prohibition on liquidated damages provisions found in 15 Okla. Stat. §§ 214 and 215, rather than 12A Okla. Stat. § 2-718, which controls contracts for the sale of

---

[2] Mikell argues that such findings are contrary to the district court's post-trial order of August 8, 1996, in which the court ordered the parties to omit from the proposed findings any reference to Noram's argument that Mikell repudiated the contract by failing to provide adequate assurances. We note first Mikell's failure to provide us a citation to the location of this order in the record. Nevertheless, after reviewing the August 8, 1996 order we find no conflict, as Noram's repudiation argument may well have been rejected based on the parties' continued performance under the contract.

goods. As the comment to that section recognizes, the provision permitting "reasonable" liquidated damages in a commercial sales contract supersedes the general prohibition in 15 Okla. Stat. §§ 214 and 215. See Oklahoma Code Comment to 12A Okla. Stat. Ann. § 2-718; see also 12A Okla. Stat. § 1-103 (stating general principles of law supplement code "[u]nless displaced by the particular provisions of this act").

The district court's determination whether the liquidated damages provision is enforceable as a reasonable forecast of anticipated damages will be upheld unless clearly erroneous. See Buttes Gas & Oil Co. v. Winkler (In re Sierra Trading Corp.), 482 F.2d 333, 336 (10th Cir. 1973). We agree with the district court that reimbursement of the unrecouped portion of the prepayment was a reasonable assessment of damages in this case. Had Mikell honored Noram's standing request for the minimum volumes throughout the recoupment period, Noram would have recouped its prepayment. As Mikell's breach caused Noram to pay for gas which was not delivered, it was reasonable to require Mikell to refund the prepayment.

## IV. Attorneys Fees

Mikell disputes the district court's award of attorneys fees under 12 Okla. Stat. § 936, arguing that the settlement agreement was not a contract for the sale of goods entitling Noram to fees. "We review de novo any legal conclusions that

-9-

provide a basis for an award under § 936." Strickland Tower Maintenance, Inc. v. AT&T Communications, Inc., 128 F.3d 1422, 1428 (10th Cir. 1997). We review the reasonableness of such fees for an abuse of discretion. See id.

Although the settlement agreement only supplemented the underlying gas purchase contracts, we agree with the district court that the agreement was one for the sale of goods. The contract called for payment of a sum certain, and obligated defendants to deliver a particular amount of gas each month or to refund the prepayment. See Arkla Energy Resources v. Roye Realty & Developing, Inc., 9 F.3d 855, 859, 860-61 (10th Cir. 1993) (affirming finding, under Oklahoma law, that settlement agreement requiring payment of a particular sum and obligating sellers to deliver gas upon request was an installment contract for sale of goods); RJB Gas Pipeline Co. v. Colorado Interstate Gas Co., 813 P.2d 1, 13 (Okla. Ct. App. 1989) (holding contract requiring seller to sever and deliver gas to buyer was a contract for the sale of goods, even if gas not actually severed and delivered). Noram's claims against defendants directly related to this sale, seeking reimbursement of sums paid for gas which defendants failed to deliver under the contract. This case is distinguishable, therefore, from Octagon Resources, Inc. v. Bonnett Resources Corp. (In re Meridian Reserve, Inc.), 87 F.3d 406, 412 (10th Cir. 1996), where we held § 936 did not apply because the subject of the lawsuit only tangentially related to the sale of goods. Cf. ABC

-10-

Coating Co. v. J. Harris & Sons, Ltd., 747 P.2d 271, 273 (Okla. 1987) (holding applicability of § 936 determined by looking at underlying nature of suit; attorneys fees proper if damages arose directly from rendition of labor or services, such as failure to pay for such services).

Mikell also argues that the district court abused its discretion in awarding attorney fees jointly against both defendants. His argument is limited to a single conclusory assertion that a party is not entitled to fees if it fails to allocate the fees it incurred between the parties. No authority is cited for this proposition, and we have found none. By failing to develop this argument or cite any authority to support its assertion, Mikell has waived this issue on appeal. See Brownlee v. Lear Siegler Management Servs. Corp., 15 F.3d 976, 977 (10th Cir. 1994) (holding conclusory reference to district court error without citation to legal authority not adequate appellate argument).

Even if we were to consider the merits of Mikell's argument, we perceive no abuse of discretion in the district court's awarding damages jointly against the two defendants. Mikell and Enterprise were related entities, owned interests in the same wells, were sellers under the same settlement agreement, were subject to identical responsibilities under the agreement, were sued in a single proceeding for breaching the same provision, and were represented by a single attorney. It is reasonable to conclude that Noram would have incurred the same attorney fees

-11-

even if it had sued only one of the defendants, and that the fees were not divisible between the parties.

The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.

Entered for the Court


David M. Ebel
Circuit Judge