**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

INERGY PROPANE, LLC,,

     Plaintiff-Appellant-Cross-
     Appellee,

v.

UNION BANK OF CHANDLER,

     Defendant-Appellee-Cross
     Appellant.

Nos. 04-6211 and 04-6254
(D.C. No. CIV-03-894-HE)
(Western District of Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Circuit Judge**, McWILLIAMS**, Senior Circuit Judge**,
McCONNELL**, Circuit Judge.

04-6211

On July 1, 2003, Inergy Propane, LLC (Inergy), a Delaware Limited Liability

Company authorized to do business in Oklahoma, brought suit in the United States

District Court for the Western District of Oklahoma against the Union Bank of Chandler

(the Bank).  Jurisdiction was based on 28 USC § 1332, Inergy and the Bank being citizens

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

of different states and the amount in controversy being in excess of $75,000.  Under the heading "General Allegations," Inergy stated that it routinely sold and purchased propane to and from Powder Horn Petroleum Company (Powder Horn).  Inergy went on to allege that "as a regular part of their business and customary course of dealing, Inergy and Powder Horn net and offset amounts owed from one to the other as a result of concurrent or overlapping sales and purchases of propane."  In this connection, Inergy alleged that "after netting their accounts receivable and accounts payable, if any balance remains outstanding between Inergy and Powder Horn, the party with the balance due normally instructs its bank to wire transfer an amount equal to such balance due to the other party's commercial bank."  According to the complaint, Wachovia Bank was the commercial bank for Inergy and the Bank was the commercial bank for Powder Horn.

Inergy then went on to allege in its complaint that as of April 17, 2003, Inergy had a gross account payable to Powder Horn of $109,200, and Powder Horn had a gross account payable to Inergy of $103,950, and that, accordingly, Inergy under its understanding with Powder Horn, had due and payable to Powder Horn the amount of $5,250, i.e., the difference between $109,200 and $103,950.  According to the complaint, on April 25, 2003, Inergy, intending to instruct its bank, Wachovia Bank, to wire transfer to Powder Horn's account at the Bank the sum of $5,250, such being the "net amount due and payable to Powder Horn," mistakenly instructed Wachovia to wire transfer the sum of $109,200 to Powder Horn's account at the Bank, such being the gross amount due

Powder Horn and not the "net amount" due Powder Horn.

Inergy then went on to allege as follows:

13. Due to this clerical error, Inergy wired $103,950 in excess of the net amount due and payable to Powder Horn. Powder Horn agrees that the $103,950 excess payment belongs to Inergy and should be returned to Inergy.

14. Upon receipt of the wire transfer, Union Bank withdrew the $103,950 excess payment from Powder Horn's account.

15. On May 16, 2003, Inergy realized that it had erroneously wired the wrong amount to Powder Horn's account.

16. On May 20, 2003, Inergy contacted Union Bank to request return of the $103,950 overpayment.

17. On May 21, 2003, Inergy made a written demand on Union Bank to return the $103,950 belonging to Inergy.

\* \* \* \* \*

20. As of the date of this complaint, Union Bank has failed and refused to return the $103,950 belonging to Inergy.

Based on the foregoing, Inergy sought recovery of the $103,950 which it states was mistakenly given to the Bank, and sets forth three different claims for relief, i.e., (1) unjust enrichment; (2) money had and received ("the $103,950 belonging to Inergy should in 'equity and good conscience' be returned by Union Bank to Inergy"); and (3) conversion.

On July 18, 2003, the Bank filed its answer to Inergy's complaint, the gist of which was a denial that Inergy was "entitled to recover in the action." In paragraph 8 of

its answer, the Bank alleged as follows:

> In response to the allegations contained in paragraph fourteen of plaintiff's complaint, Union admits that in the exercise of its legal, lawful, and contractual rights it applied funds from the accounts maintained by Powder Horn Petroleum Company, Inc., to the obligations owed to Union by Powder Horn Petroleum Company, Inc. All other allegations, express or implied, contained in paragraph fourteen of plaintiff's complaint are denied.

The Bank in its answer also denied that it was liable to Inergy under any of its three claims for relief, i.e., unjust enrichment, money had and received, or conversion, and, under the heading of "Affirmative Defenses," alleged that Inergy had failed to state a claim for relief against the Bank, that Inergy's claims were barred by the doctrines of estoppel, waiver and laches, and that Powder Horn was, in fact, indebted to the Bank pursuant to certain loan agreements upon which it had defaulted and that the Bank had acted "at all times pursuant to its legal, lawful and contractual rights."

Although there had been no discovery by either party, Inergy, on October 9, 2003, filed a motion for summary judgment with a supporting brief, contending that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law. On October 27, 2003, the Bank filed its "objections" to Inergy's motion for summary judgment, with a supporting brief. In the first paragraph in its "objections" the Bank spoke as follows:

> The undisputed facts of this action establish that _if_ summary judgment is appropriate it is appropriate in favor of Union Bank. Questions of fact exist which render summary

judgment inappropriate in favor of plaintiff in this action.
(Emphasis added.)

In its "objections," the Bank also argued that Powder Horn's funds in its accounts at the Bank had been applied to Powder Horn's loan obligations to the Bank over two weeks before Inergy asserted any claim based on an alleged "mistake" by Inergy.

As a preliminary matter, we note that the Bank never filed a motion for summary judgment in its favor based on Fed.R.Civ.P. 56. As stated, Inergy did file a motion for summary judgment and a hearing was held on that motion, in the course of which the Bank argued that Inergy's motion for summary judgment should be denied, and, in thus arguing, suggested that actually it was the Bank which should be granted summary judgment on the claims asserted in Inergy's complaint. It was in this setting that the district court on March 28, 2004, denied Inergy's motion for summary judgment, and the district court, *sua sponte,* in a sense, entered summary judgment in favor of the Bank. Be that as it may, we believe that even though the Bank filed no formal cross-motion for summary judgment, the district court, from a procedural standpoint, did not err in considering, at the hearing on Inergy's motion for summary judgment, whether summary judgment should be entered, instead, for the Bank. *See Pueblo of Santa Ana v. Mountain States Tel. & Tele. Co.,* 734 F.2d 1402 (10th Cir. 1984), *rev'd on other grounds,* 472 U.S. 237 (1985). Inergy has made no suggestion in this Court, or in the district court, that it was somehow "ambushed" or otherwise "surprised" when the district court denied Inergy's motion for summary judgment and entered summary judgment in favor of the

Bank. Accordingly, we will resolve the present appeal on its merits.

As stated, this is a diversity case and hence involves the application of Oklahoma law to the facts of the present case. Before the district court when it denied Inergy's motion for summary judgment, and more or less *sua sponte,* entered summary judgment in favor of the Bank were the following: (1) Inergy's complaint and the Bank's answer thereto; (2) Inergy's motion for summary judgment and its brief in support thereof; (3) the Bank's "objection" to Inergy's motion for summary judgment and a brief in support thereof; and (4) various affidavits and depositions submitted by the parties. Based thereon, the district court, on the eve of trial, denied Inergy's motion for summary judgment and entered summary judgment in favor of the Bank. Inergy appeals, arguing that the district court erred in entering summary judgment for the Bank, and that summary judgment should have been entered in its favor as a matter of law.

In its unpublished order, the district court first stated that although there was a dispute as to the existence of a so-called "netting agreement" between Inergy and Powder Horn, such was in the district court's view, immaterial. What was material, according to the district court, was that the Bank had a preexisting banking relationship with Powder Horn which included a credit arrangement to finance Powder Horn's working capital needs, involving a principal amount of $4,000,000. The court noted that at the time the Bank received Inergy's check to the Bank for $109,200 which was deposited in Powder Horn's account with the Bank, it was undisputed that Powder Horn was in default of its

obligations to the Bank and that the Bank simply "applied the funds from Inergy, upon their receipt, to Powder Horn's indebtedness to the bank." The district court went on to note it was some three weeks later that Inergy first contacted the Bank, claiming "clerical error," and asked the Bank to return to Inergy "the sum of $103,950," which, it said, rightfully belonged to Inergy, i.e., the difference between the amount Inergy remitted to the Bank, $109,200, and the amount it says it intended to remit, namely, $5,250. The district court went on to frame the question before it as follows: "whether Union Bank had the right to apply the funds of Powder Horn in [its] deposit account to amounts owed by [Powder Horn] to the bank and whether, based on the claims advanced by it, plaintiff has some greater claim to the funds." The district court then answered that question as follows: "The undisputed facts establish the fact that Union Bank had both a security interest in all deposits of Powder Horn and a right of set-off."

By way of general background, it would appear that on about February 18, 2003, Powder Horn entered into a loan agreement with the Bank for the principal sum of $4,000,000 and in connection therewith executed and delivered to the Bank a promissory note and security agreement, which was duly recorded. Powder Horn also maintained its deposit accounts with the Bank. Further, on or about April 17, 2003, Powder Horn submitted invoice number 10105 to Inergy showing $109,200 due and owing for the delivery of 5,000 barrels of propane. The invoice directed Inergy to make payment to the Bank for Powder Horn's account. On that same day, Inergy submitted to Powder Horn

invoice number 40906 showing $103,950 due and owing for the delivery of 5,000 barrels of propane.  That invoice directed Powder Horn to make payment to the First National Bank, Charlotte, North Carolina, for Inergy's accounts.  Neither invoice contained any reference to the other invoice and neither indicated any agreement for a "set off" or "net out" in favor of either.[1]

It was in this general setting, that on April 25, 2003, Inergy directed its bank, Wachovia, to wire transfer $109,200 to the Bank for Powder Horn's account, which was consistent with the directions contained in Powder Horn's invoice, and was in the same manner Inergy had previously paid invoices from Powder Horn. On or about May 6, 2003, the Bank declared Powder Horn in default on its loan obligations and applied the monies in Powder Horn's accounts to Powder Horn's outstanding loan indebtedness with the Bank.  It was some two weeks later, after Inergy ascertained that Powder Horn could not pay it the $103,950 it owed Inergy, that Inergy first contacted the Bank and stated that due to a clerical error within its offices, Inergy had sent a wire for $109,200 instead of for $5,250, and made a demand for Union Bank to return $103,950.

Based on the record before it, the district court summarized the facts out of which the present controversy arose as follows:

> Plaintiff Inergy Propane, LLC ("Inergy") and Powder Horn

---

[1]Inergy disputes this contention, but, as previously noted, the district court found that dispute to be "immaterial."

Petroleum Company ("Powder Horn") bought and sold propane to each other. As of April 25, 2003, sales between the companies resulted in Inergy owing Powder Horn $109,200 and Powder Horn owing Inergy $103,950. On that date, Inergy instructed its bank to wire $109,200 to Powder Horn's bank, defendant Union Bank

The bank had previously loaned money to Powder Horn and the company was in default on its loan when the Inergy payment was deposited in the bank account. Union Bank applied the funds from Inergy, upon their receipt, to Powder Horn's indebtedness. Approximately three weeks later Inergy contacted the bank, asserting it had paid the sum of $109,200 by mistake and had intended to pay only the net amount it owed Powder Horn after setting off the $103,950 Powder Horn owed it. When Union Bank refused to reverse the transaction, Inergy filed this lawsuit seeking the return of the $103,950 through claims for unjust enrichment, money had and received, and conversion.

We are in general agreement with the district court's appraisal of the evidentiary matter before it when it denied Inergy's motion for summary judgment and *sua sponte* entered summary judgment for the Bank. We agree with the district court that the existence of a "netting" agreement between Inergy and Powder Horn, assuming there was one, was "immaterial for the purposes of resolving" Inergy's claims against the Bank. Inergy claims that Okla. Stat. tit. 12A § 1-9-404 subjected the Bank to any netting agreement between Inergy and Powder Horn. Assuming that such a netting agreement existed, Inergy's argument misconstrues the relationship between the parties. Section 1-9-404 deals only with rights acquired by an assignee. Accordingly, under § 1-9-404, the Bank would be subject to Inergy's claims against Powder Horn only if it were an assignee

under the contract. Inergy presented no evidence demonstrating that Powder Horn assigned its rights under the Inergy Propane-Powder Horn contract to Union Bank. Absent such an assignment, there is no basis for subjecting the Bank to Inergy's claims against Powder Horn. The present controversy apparently only blossomed after Powder Horn failed to pay the $103,950 which it admittedly owed Inergy. It was apparently at that particular time that Inergy first discovered its in-house "clerical error" which precipitated its demand on the Bank to pay Inergy the sum of $103,950. Because the Bank was not an assignee to the contract between Inergy and Powder Horn, Inergy's right to recovery existed only against Powder Horn, not the Bank. As mentioned, this is a diversity case governed by Oklahoma law.

Further, we agree with the district court that neither Okla. Stat. tit. 12A-§1-9-340 nor *Commerce Bank N.A. v. Chrysler Realty Corp.,* 244 F.3d 777 (10th Cir. 2001*),* dictates a reversal in the present case. As the district court found, § 1-9-340 confirms that the Bank's perfected security interest in funds deposited into Powder Horn's accounts has priority over Inergy's claims. Although the plain language of § 1-9-340 applies only to a Bank's right of recoupment against secured parties, the concept is clear: a bank may exercise a right of set-off against any party other than one perfected by control. Because Inergy did not have a security interest in the $103,950, let alone one perfected by control, § 1-9-340 gives the Bank priority over the funds deposited in Powder Horn's account.

As mentioned, this is a diversity case and hence is governed by Oklahoma law. In

reviewing a federal district court's understanding and application of state law, our review is *de novo*. *Horace Mann Ins. Co. v. Johnson,* 953 F.2d 575, 576 (10th Cir. 1991). Using that standard of review, we are in accord with the district court's understanding and application of Oklahoma law to the facts of the instant case.

Accordingly the judgment of the district court denying Inergy's motion for summary judgment and *sua sponte* granting summary judgment in favor of the Bank is affirmed.

04-6254

Subsequent to the district court's entry of summary judgment in favor of the Bank, the Bank filed a motion for attorney fees in the amount of $24,795. Inergy thereafter filed a response thereto, and the Bank later filed a reply. The district court denied the Bank's motion for attorney fees and the Bank cross-appeals the district court's denial of its motion for attorney fees.

All agree that this being a diversity case, the question of attorney fees is to be determined under Oklahoma law. Oklahoma, like most other states, follows the American rule that each party is responsible for its own litigation costs and expenses, including attorney fees. Further, Oklahoma courts are without authority to award attorney fees absent a specific statute or contractual term. *In re Meridan Reserve, Inc.,* 87 F.3d 406, 410 (10th Cir. 1996).

The Bank, apparently recognizing that under Oklahoma law, Inergy's claims of unjustified enrichment, money had and received, and conversion would not, themselves

- 11 -

justify an award of attorney fees, suggests that the district court should have looked at the "underlying facts," such as the various purchase and sale agreements between Inergy and Powder Horn, and the Bank's enforcement of its security interest in Powder Horn's accounts with the Bank. In this regard, we would note that neither of those "underlying facts" were between Inergy and the Bank, the first being between Inergy and Powder Horn and the second being between the Bank and Powder Horn. As stated, Inergy's claims against the Bank were for unjust enrichment, money had and received, and conversion.

In denying the Bank's motion for attorney fees, the district court concluded its order by stating that the Bank "has failed to establish a contractual right, specific statutory authorization, or some other basis for a fee award." We agree with the district court that Okla. Stat. tit.12, §936 is not broad enough to permit the Bank to receive an attorney fee in a case where Inergy sued the Bank for unjust enrichment, money had and received, or conversion.

Judgment affirmed.

ENTERED FOR THE COURT

Robert H. McWilliams
Senior Circuit Judge